UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
LAN SANG

<div style="text-align:right">Civil Action No.: 12-CV-07103 (JPO)</div>

    Plaintiff,

  -against-

MING HAI and LAW OFFICE OF MING HAI, P.C.


    Defendants.
---------------------------------------------------------------- x




## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT






<div style="margin-left:50%">

WINGET, SPADAFORA &
 SCHWARTZBERG, LLP
*Attorneys for the Defendants Ming Hai and*
*Law Office of Ming Hai, P.C.*
45 Broadway, 19th Floor
New York, New York 10006
(212) 221-6900

</div>



*On the Brief*:   Dianna D. McCarthy

# TABLE OF CONTENTS

Preliminary Statement …………….…..………………………………………………1

Statement of Facts ………………………..………………………………………...2

Argument …………………..……………………………………………………….5

    Point I – Standard of Review …………………………………………………5

    Point II – Plaintiff's First Cause of Action for Defamation Must be Dismissed
        for failure to State a Claim Upon Which Relief May be Granted………. 6

        a.   Expressions of Opinion Never Constitute Defamation …………………9

            1.   The Alleged Defamatory Statements are Statements of Opinion
               and/or Imaginative Expression …………………………………..10

            2.   The Alleged Defamatory Statements are Statements of Opinion
               Due to their Broader Context …………………………………….12

        b.   Pleading Libel Requires Pleading Entitlement to Special Damages …...11

        c.   Plaintiff fails to Plead Libel Per Se …………………………………...15

        d.   Fair and True Reports of Judicial Proceedings are Non-Actionable …...16

    Point III – Plaintiff's Second Cause of Action for Breach of NY Civ. Rights
        Law §§ 50-51 Must be Dismissed for Failure to State a Claim Upon
        Which Relief May be Granted……........................................................18

    Point IV – Plaintiff's Third Cause of Action for Breach of Contract Must be
        Dismissed for Failure to State a Claim Upon Which Relief May be
        Granted …………………………………………………………..21

    Point V – Plaintiff's Fourth Cause of Action for Tortious Interference with
        Contractual Relations Must be Dismissed for Failure to State a Claim
        Upon Which Relief May be Granted …………………………………...22

    Point VI – Plaintiff's Fifth Cause of Action for Tortious Interference with Business
        Relations Must be Dismissed for Failure to State a Claim Upon Which
        Relief may be Granted ……………………………………………24

Point VII – Plaintiff's Sixth Cause of Action for Breach of Fiduciary Duty Must
        be Dismissed for Failure to State a Claim Upon Which Relief may
        be Granted …………………………………………………………………...26


Point VIII – Plaintiff's Seventh Cause of Action for Intentional Infliction of
        Emotional Distress Must be Dismissed for Failure to State a Claim
        Upon Which Relief may be Granted ……………………………………28


Point IX – Plaintiff's Eighth Cause of Action for a Permanent Injunction Must
        be Dismissed for Failure to State a Claim Upon Which Relief may be
        Granted ………………………………………………………………………30


Point X -  In the Alternative this Case Should be Transferred to the Civil Court…….31
        of the City of New York, County of Queens

        a.  "First-Filed" Rule …………………………………………………...31

        b.  Venue is Proper in the Civil Court of the City of New York, …………....32
            Queens County

Conclusion ………………………………………………………………………………...33

## TABLE OF AUTHORITIES

Fed. R. Civ. P. 12(b)(6).                                                    1, 5, 33

New York Civil Rights Law § 50-51.                                           1, 18, 20, 21,
                                                                             29

New York Civil Rights Law § 74.                                              17, 18

New York CPLR § 602(a).                                                      32

New York CPLR § 3211(a)(4).                                                  32

RESTATEMENT (SECOND) OF TORTS § 766 (1979).                                  22, 24

800-Flowers, Inc. v. Intercontinental Florist, 860 F. Supp. 128 (S.D.N.Y. 1994).   31

American Steamship Owners Mutual Protection and Indemnity Assoc., Inc. v.    31
    Lafarge North America, Inc., 474 F.Supp.2d 474 (S.D.N.Y. 2007).

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).                                   5, 6, 14

Armstrong v. Simon & Schuster,, 85 N.Y.2d 373 (N.Y. 1995).                   7

Arrington v. New York Times Co., 55 N.Y.2d 433, cert denied 459 U.S. 1146    18
    (1983).

Aronson v. Wiersma, 65 N.Y.2d 592 (1985).                                    6, 7

Ashley MRI Mgt. Corp. v. Perkes, 2010 N.Y. Misc. LEXIS 1166 (N.Y. Sup. Ct.   30
    2010).

Atlantis Info. Tech., GmbH v. CA, Inc., 485 F. Supp. 2d 224 (E.D.N.Y. 2007). 21

Barbara v. Marinemax, Inc., 2012 U.S. Dist. LEXIS 171975 (E.D.N.Y. 2012).    21, 28

Becher v. Troy Pub. Co., 183 A.D.2d 230 (N.Y. 1992).                         17

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).                                    5, 6

Beverley v. Choices Women's Medical Center, Inc., 78 N.Y.2d 745 (N.Y.               18, 20, 21
    1991).

Biro v. Conde Nast, 2012 U.S. Dist. LEXIS 112466 (S.D.N.Y. 2012).                   2, 4, 5, 6, 7, 8,
                                                                                    9, 10, 11, 13,
                                                                                    14, 15

Black Radio Network, Inc. v. NYNEX Corp., 2000 U.S. Dist. LEXIS 594                 25
    (S.D.N.Y. 2000).

Brennan Ctr. For Justice at N.Y. Univ. Sch. of Law v. United States DOJ, 2012       27
    U.S. App. LEXIS 19685 (2d Cir. Sept. 19, 2012).

Brian v. Richardson, 87 N.Y.2d 46 (N.Y. 1995).                                      9, 12

Business Lenders, LLC v. PKR Stores, LLC, 2010 N.Y. Misc. LEXIS 4923                23
    (N.Y. Sup. Ct. Sept. 28, 2010)

Carvel Corp. v. Noonan, 3 N.Y.3d 182 (2004).                                        22

Catskill Dev., L.L.C. v. Park Place Entm't Corp., 345 F. Supp. 2d 360               24, 25
    (S.D.N.Y. 2004).

Celle v. Filipino Reporter Enters., 209 F.3d 163 (2d Cir. 2000).                    6, 7, 13

Cerasani v. Sony Corp., 991 F. Supp. 343 (S.D.N.Y. 1998).                           19

Cholowsky v. Civiletti, 69 A.D.3d 110 (2d Dep't 2009).                              17, 18

Conboy v. AT&T, 241 F.3d 242 (2d Cir. 2001).                                        28

Creel v. Crown Publishers, Inc., 115 A.D.2d 414 (1st Dep't 1985).                   20

Dillon v. City of New York, 261 A.D.2d 34 (1st Dep't 1999).                         7

DLJ Mortg. Capital Inc. v. Home Loan Corp., 667 F. Supp. 2d 368 (S.D.N.Y.   21
        2009).

Drummond v. Morgan Stanley & Co., 1996 U.S. Dist. LEXIS 16137 (S.D.N.Y.   24
        Oct. 30, 1996).

Drug Research Corp. v. Curtis Publishing Co., 7 N.Y.2d 435 (N.Y. 1960).   13

Flores v. Mosler Safe Co., 7 N.Y.2d 276 (N.Y. 1959).   18, 19, 20

Freihofer v. Hearts Corp., 65 N.Y.2d 135 (1985).   29

Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation, 2009 U.S. Dist.   6
        LEXIS 111675 (E.D.N.Y. Dec. 1, 2009).

Gross v. New York Times Co., 82 N.Y.2d 146 (1993).   9, 10, 16

Guard-Life Corp. v. Parker Hardware Mfg. Corp., 50 N.Y.2d 183 (1980).   22, 25, 26

Hammer v. Trendl, 2003 U.S. Dist. LEXIS 623 (E.D.N.Y. Jan. 18, 2003).   30

Hannex Corp. v. GMI, Inc., 140 F.3d 194 (2d Cir. 1998).   26

Hargrove v. Clark Equipment Co., 1984 U.S. Dist. LEXIS 20969 (S.D.N.Y.   32
        1984).

Harte v. Iberia Airlines, 2002 U.S. Dist. LEXIS 14964 (S.D.N.Y. Aug. 13,   5
        2002).

Holy Spirit Asso. for Unification of World Christianity v. New York Times Co.,   17
        49 N.Y.2d 63 (N.Y. 1979).

Hyatt v. Salisbury, 207 Misc. 785 (N.Y. Sup. Ct. 1955).   15

Howell v. New York Post Co., 81 N.Y.2d 115 (N.Y. 1993).   20, 21, 28

Idema v. Wager, 120 F. Supp. 2d 361 (S.D.N.Y. 2000).   6

Israel v. Wood Dolson Co., 1 N.Y.2d 116 (1956).                                           22

James v. Gannett Co., 40 N.Y.2d 415 (1976).                                               7, 10

Karedes v. Ackerley Group, Inc., 423 F.3d 107 (2d Cir. 2005).                             6

Kaupp v. Church, 2011 U.S. Dist. LEXIS 105794 (S.D.N.Y. Sept. 19, 2011).                  30

Kendall v. Stone, 5 N.Y. 14 (1851).                                                       14

Kirch v. Liberty Media Corp., 449 F.3d 388 (2d Cir. 2006).                                23

Krepps v. Reiner, 588 F. Supp. 2d 471 (S.D.N.Y. 2008).                                    7

Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90 (1993).                                           22

Kuersteiner v. Schrader, 2008 N.Y. Misc. LEXIS 10784 (N.Y. Sup. Ct. Oct. 14,              13, 19
      2008).

Kurtzman v. Bergstol, 40 A.D.3d 588 (2nd Dep't 2007).                                     26

Leary v. Punzi, 179 Misc. 2d 1025 (N.Y. Sup. Ct. 1999).                                   18

Levin v. McPhee, 119 F.3d 189 (2d Cir. 1997).                                             7, 10

Liberman v. Gelstein, 80 N.Y.2d 429 (1992).                                               15

Mann v. Abel, 10 N.Y.3d 271 (N.Y. 2008).                                                  9, 10, 11

Matherson v. Marchello, 100 A.D.2d 233 (N.Y. 2d Dep't 1984).                              14

McNamee v. Clemens, 2011 U.S. Dist. LEXIS 10664 (E.D.N.Y. 2011).                          29

Messenger v. Gruner + Jahr Printing & Publ'g, 94 N.Y.2d 436 (N.Y. 2000).                  20, 21

Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990).                                       10

Mills v. Miteq, Inc., 2007 U.S. Dist. LEXIS 76488 (E.D.N.Y. 2007).                        19

Mills v. Polar Molecular Corp., 12 F.3d 1170 (2d Cir. 1993).                                5

Ming Hai & Ming Hai, P.C. v. Lan Sang, Docket No. CV-078233-11/QU. Civil        4, 17, 31
     Ct. City of New York, Queens County.

Natural Res. Media & Tech. Group, LLC v. Snoop Youth Football League           23, 24
     Found., 2008 U.S. Dist. LEXIS 20642 (S.D.N.Y. 2008).

NBT Bancorp. v. Fleet/Norstar Fin. Group, 87 N.Y.2d 614 (1996).                22, 24

November v. Time Inc., 13 N.Y.2d 175 (1963).                                   7

Omni Health & Fitness Complex of Pelham, Inc. v P/A-Acadia Pelham Manor,        26
     LLC, 33 Misc. 3d 1211A (N.Y. Sup. Ct. 2011).

Pacheco v. United Med. Assocs., P.C., 305 A.D.2d 711 (3d Dep't 2003).          26

Pearlstein v. Draizin, 190 Misc. 27 (N.Y. Sup. Ct. 1947).                     15, 16

Phelan v. Huntington Tri-Village Little League, Inc., 16 Misc. 3d 1138A (N.Y.   15
     Sup. Ct. 2007).

Pisani v. Staten Island University Hospital and Ferreri, 2008 U.S. Dist. LEXIS  14
     30855 (E.D.N.Y. 2008).

Qureshi v. St. Barnabas Hosp. Ctr., 430 F. Supp. 2d 279 (S.D.N.Y. 2006).       7, 9

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007).                                 2

Rsa Distribs. v. Contract Furniture Sales, 248 A.D.2d 370 (2d Dep't 1998).     24

Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010).                              30

Sang Lan v. AOL Time Warner, Inc., et. al. Docket No. 11-CV-2870 S.D.N.Y.       2
     (2011).

Spotless Enterprises, Inc. v. The Accessory Corp., 415 F.Supp.2d 203           31, 32

(E.D.N.Y. 2006).

Steinhilber v. Alphonse, 68 N.Y.2d 283 (N.Y. 1986).                    10, 13

Stevens v. State of New York, 691 F.Supp.2d 392 (S.D.N.Y. 2009).       28

Stuto v. Fleishman, 164 F.3d 820 (2d Cir. 1999).                       28, 29

The Reporters' Ass'n of America v. The Sun Printing and Publishing Ass'n,   14
    186 N.Y. 437 (1906).

Ticor Title Ins. Co. v. Cohen, 173 F.3d 63 (2d Cir. 1999).             30

United States v. Mejia, 655 F.3d 126 (2d Cir. 2011).                   27

Wallach v. Bacharach, 192 Misc. 979 (N.Y. Sup. Ct. 1948).             20

Walter v. NBC Tel. Network, Inc., 27 A.D.3d 1069 (4th Dep't 2006).    20, 21

Waste Servs., Inc. v. Jamaica Ash & Rubbish Removal Co., 262 A.D.2d 401   26
    (2d Dep't 1999).

WFB Telecommunications, Inc. v. NYNEX Corp., 188 A.D.2d 257 (1st Dep't   24
    1992).

## PRELIMINARY STATEMENT

Plaintiff, Lan Sang ("Plaintiff") is a former client of Defendants, Ming Hai ("Mr. Hai") and the Law Office of Ming Hai, P.C. ("Law Office") (collectively "Defendants").   Plaintiff alleges that Defendants wrote defamatory statements and published photographs of her without her permission on a Chinese blog.   Plaintiff further alleges that Defendants breached their fiduciary duty to Plaintiff by disclosing her confidential information to the public.   Last, Plaintiff, a former celebrity gymnast, alleges that Defendants' actions interfered with her ability to maintain sponsorships and obtain new sponsorships.

As a result of the aforementioned, Plaintiff alleges claims against Defendants for: (1) defamation; (2) Breach of New York Civil Rights Law §§ 50-51; (3) breach of fiduciary duty; (4) breach of contract; (4) tortious interference with contractual relations; (5) tortious interference with business relations; and (6) intentional infliction of emotional distress.[1]  Plaintiff also seeks an injunction enjoining Defendants from making any further publications about Plaintiff.

Defendants move to dismiss this action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, Defendants maintain that the statements at issue do not constitute defamation, as they are merely expressions of opinion, imaginative expressions of future events, fair and true reports of judicial proceedings, and the statements do not relate to Plaintiff.  Plaintiff further fails

---

[1] On September 20, 2012, Plaintiff filed the original Complaint.  Prior to the time for Defendants to respond to the Complaint, Plaintiff amended the Complaint to add additional allegations relating to the defamation claim, and a claim of tortious interference with contractual relations.  Defendants filed a motion to dismiss Plaintiff's amended complaint on or about November 21, 2012.  On December 18, 2012 Plaintiff filed a motion to amend, and submitted a proposed second amended complaint.  Defendants did not oppose Plaintiff's motion to amend, but submit this motion to dismiss Plaintiff's second amended complaint as it still fails to state a claim upon which relief can be granted and is improperly brought before this Court, as a current action between the same parties involving the same claims is currently pending in New York state court.

to properly plead claims for defamation as she does not plead special damages sufficiently. Furthermore, any use of Plaintiff's photograph or likeness was not for trade or advertising purposes, and falls into the newsworthiness exception. Plaintiff further fails to sufficiently plead how Defendants' alleged actions caused any interference with Plaintiff's existing or prospective contracts. Plaintiff's claims for breach of fiduciary duty and breach of contract are further redundant and warrant dismissal on the pleadings. Plaintiff's cause of action for intentional infliction of emotional distress is deficient as a matter of law, as the conduct alleged is not sufficiently outrageous to sustain a cause of action. Last, Plaintiff commenced this action in Federal Court after Defendants commenced an action against her, involving substantially similar claims. As such, in the alternative to dismissal, this action should be consolidated and transferred to the Civil Court of the City of New York under the First-Filed rule. For the reasons set forth below, dismissal of the Complaint in its entirety is warranted.

## <u>STATEMENT OF FACTS</u>[2]

Plaintiff is an alleged former world class gymnast who was injured in 1999 during a competition in New York. <u>See</u> Second Amended Complaint filed December 18, 2012 annexed to the Declaration of Dianna D. McCarthy, dated January 28, 2013 ("McCarthy Decl.") as Exhibit "A" at ¶ 1. Mr. Hai and his Law Office previously represented Plaintiff in a matter commenced in this Court under Docket No. 11-CV-2870. <u>See</u> <u>Id.</u> at ¶ 2. A copy of the Complaint titled <u>Sang Lan v. AOL Time Warner, Inc., et. al.</u> Docket No. 11-CV-2870 is annexed to the McCarthy Decl., as Exhibit "B."[3] Plaintiff alleges that Mr. Hai operates a Chinese law

---

[2] A motion to dismiss tests only the legal sufficiency of the Complaint. Thus, for purposes of this motion to dismiss, the facts in the Complaint are taken to be true. This statement of facts is for purposes of the motion to dismiss only and is taken from the Complaint. Thus, Defendants are not admitting any of the allegations in the Complaint.

[3] The Complaint in <u>Sang Lan v. AOL Time Warner, Inc., et. al.</u> Docket No. 11-CV-2870 is incorporated by reference in the Complaint in the instant matter. <u>See</u> <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007); <u>Biro v.</u>

blog through the service provider "Tencent Weibo," which is published in Chinese.   See
McCarthy Decl., Exhibit "A" at ¶¶ 13-14.   According to the Second Amended Complaint, Mr.
Hai published the following statements on "Tencent Weibo" between September 21, 2012 and
September 26, 2012:

> "Lan Sang said that if Huang Jian abandoned her, then she would
> come to the United States to be Hai Ming's mistress";
>
> "She [Lan Sang] also told me how bad my wife is and how nice
> she is";
>
> Sang Lan has defaulted on her rent and stole the keys.  She also
> accused me of misleading her.  But, what disgusted me the most
> was that Sang Lan allowed Huang Jian to sexually ill-treat her dog
> Xiaomei.  That day during a meal at their home, the two of them
> said that Xiaomei had a strong sex drive, and always rode on
> Huang Jian.  Sang Lan said Huang Jian wanted to sexually assault
> Xiaomei by wearing condoms.  I immediately said 'Shut up!'  I
> could not listen to that any more.  It was disgusting.  I am a
> determined animal defender.  Have they no shame?  Since then, I
> particularly disliked them;
>
> "Would I accept this mistress?  I helped her because I didn't think
> I was a nice guy, and I would like to help the disabled to
> accumulate virtue for myself.  But, out of expectation, I got bitten
> by the snake."

See Id. at ¶¶ 14-18. Plaintiff alleges that her photograph was depicted without her permission in
the above-referenced blog entries.  See Id. at ¶ 44.

The Plaintiff further alleges that during an October 21, 2011 press conference, Mr. Hai
made comments, such as that he "won prosecution for delinquent legal fees for all 12 charges
against Lan Sang."  See Id. at ¶ 24.  Mr. Hai also allegedly stated during the press conference
that "because [Lan Sang] did not appear in the Court, the Court granted a default judgment, a
default judgment means that all of our prosecution was approved, all of the counterclaims of

Conde Nast, 2012 U.S. Dist. LEXIS 112466, *21 (S.D.N.Y. 2012).   The aforementioned document is also subject to
judicial notice to determine what statements are contained therein.  See Id.

Defendant were rejected.  We sued for 12 charges; each charge for $25,000; so we won $300,000." Id. at ¶ 25.  At the time the aforementioned statements were allegedly made, Plaintiff had defaulted by failure to appear at a scheduled trial on Oct. 11, 2012, in an action brought by Mr. Hai against Plaintiff in the Queens County Civil Court titled Ming Hai & Ming Hai, P.C. v. Lan Sang, Docket No. CV-078233-11/QU.  See the Complaint filed in Ming Hai & Ming Hai, P.C. v. Lan Sang, Docket No. CV-078233-11/QU annexed to the McCarthy Decl., as Exhibit "C," the Order to Show Cause to Vacate the Default annexed to the McCarthy Decl., at Exhibit "D" and true and correct copy of the e-Court docket sheet annexed hereto as Exhibit "E."[4]  The Complaint filed by Mr. Hai sought $25,000 on each of the 12 counts in the Complaint.  See Id. at Exhibit "C."  Thus, in the event a default judgment was entered, the total amount would have been $300,000.  See Id.  Plaintiff also alleges that Mr. Hai gave an interview where he stated "Lang San provided me falsified evidence for her case."  See McCarthy Decl., Exhibit "A" at ¶ 27.

Plaintiff claims that Mr. Hai made the aforementioned statements to prevent her from entering into an endorsement contract with Disney in the amount of $1,000,000, to interfere with her existing contracts with other companies in the amount of $505,617.98, and to intentionally cause Plaintiff to suffer extreme emotional distress.  See Id. at ¶¶ 30, 61, 66, 81.

---

[4] The Complaint, Order to Show Cause to vacate the default judgment and e-Court docket sheet in Ming Hai & Ming Hai, P.C. v. Lan Sang, Docket No. CV-078233-11/QU are incorporated by reference in the Complaint in the instant matter, because of the allegations stemming from that action.  See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); supra Biro, 2012 U.S. Dist. LEXIS 112466, at *21.  The aforementioned documents are also subject to judicial notice to determine what statements are contained therein.  See Id.

**ARGUMENT**

**POINT I**

**STANDARD OF REVIEW**

"Under Federal Rule 12(b)(6), a complaint will be dismissed if there is a 'failure to state a claim upon which relief can be granted." <u>See</u> Fed. R. Civ. P. 12(b)(6).  The Court must read the complaint generously accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations..." <u>Harte v. Iberia Airlines</u>, 2002 U.S. Dist. LEXIS 14964 (S.D.N.Y. Aug. 13, 2002) (citing <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993)).  A complaint must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>See</u> <u>Id</u>.  Furthermore, "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" <u>See</u> <u>Biro v. Conde Nast</u>, 2012 U.S. Dist. LEXIS 112466, at *20-21 (S.D.N.Y. 2012) (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).

Even when taking all of the allegations Plaintiff states in the Second Amended Complaint as true, and drawing all reasonable inferences from the same, all of Plaintiff's claims fail as the claims are not plausible on their face and are barred as a matter of law.  <u>See</u> <u>Id</u>.  Furthermore, as demonstrated below, many of Plaintiff's allegations consist of a conclusory recital of the elements of a cause of action.  Accordingly, the Complaint must be dismissed in its entirety.

## POINT II

**PLAINTIFF'S FIRST CAUSE OF ACTION FOR DEFAMATION MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." See Idema v. Wager, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). Under New York law, there are five elements to recover in libel: "(1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault, [or in this case actual malice on the part of the publisher, as Plaintiff has celebrity status]; (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." See supra Biro, 2012 U.S. Dist. LEXIS 112466, at *23 (citing Celle v. Filipino Reporter Enters., 209 F.3d 163, 176 (2d Cir. 2000). To be considered defamatory, a statement must expose "the plaintiff 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce an evil opinion of one in the minds of right-thinking persons, and  . . . deprive one of . . . confidence and friendly intercourse in society.'" See Id. (citing Karedes v. Ackerley Group, Inc., 423 F.3d 107, 113 (2d Cir. 2005), quoting supra Celle, 209 F.3d at 177). In federal court, defamation claims are subject to the standard set forth in the Federal Rules of Civil Procedure, Bell Atlantic and Iqbal. See supra Biro, 2012 U.S. Dist. LEXIS at *24. Thus, the allegations must be specific enough to provide the defendant with notice of the allegedly defamatory communications to enable the defendant to defend himself. See Id. (quoting Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation, 2009 U.S. Dist. LEXIS 111675 (E.D.N.Y. Dec. 1, 2009)).

The determination of whether particular words are defamatory is a legal question to be resolved by the courts. See supra Celle, 209 F.3d at 177; Aronson v. Wiersma, 65 N.Y.2d 592,

593 (1985).   While the jury is responsible for determining whether the plaintiff has been defamed, it is for the court to determine whether the statement alleged to cause plaintiff injury is susceptible to a defamatory meaning.   See Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997); James v. Gannett Co., 40 N.Y.2d 415, 419 (1976); Biro, 2012 U.S. Dist. LEXIS 112466, at *25. "Words that are not 'reasonably susceptible of defamatory meaning' are not actionable."   See supra Biro, 2012 U.S. Dist. LEXIS 112466, at *26 (quoting Qureshi v. St. Barnabas Hosp. Ctr., 430 F. Supp. 2d 279, 287 (S.D.N.Y. 2006)).   New York courts favor resolving defamation claims at the pleading stage to avoid needless litigation and chilling of constitutionally protected speech. See Armstrong v. Simon & Schuster, 85 N.Y.2d 373, 379 (N.Y. 1995).

The alleged defamatory words are to be read as the average reader would against the whole "'apparent scope and intent' of the writing."   See supra Biro, 2012 U.S. Dist. LEXIS 112466 at *26 (citing supra Celle, 209 F.3d at 177, quoting November v. Time Inc., 13 N.Y.2d 175, 178 (1963)).   The words must be read and understood by the public who reads/hears them. See Id.; see also Krepps v. Reiner, 588 F. Supp. 2d 471, 484 (S.D.N.Y. 2008).   Courts are not to "'render statements actionable by giving them a strained or artificial construction.'"   See Id. (citing supra Qureshi, 430 F. Supp. 2d at 287, quoting Dillon v. City of New York, 261 A.D.2d 34, 38 (1st Dep't 1999)).

The Plaintiff alleges that several statements Mr. Hai wrote on a Chinese blog defamed her.   See McCarthy Decl., Exhibit "A" at ¶¶ 14-18.   However, as discussed in turn below, the words contained in each statement are not defamatory as a matter of law, thus the defamation claim must be dismissed in its entirety.   See supra Celle, 209 F.3d at 177; supra Aronson, 65 N.Y.2d at 592.   First, the alleged statement that Plaintiff "defaulted on her rent and stole the keys" is not the type of statement that exposes Plaintiff to "public hatred, shame, obloquy,

contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace". See supra Biro, 2012 U.S. Dist. LEXIS 112466, at *23. Nor would the aforementioned induce an evil opinion of Plaintiff, and deprive her of friendly intercourse in society. See Id. Indicating that one has defaulted on her rent is not the same as stating an individual committed a serious crime. Rather, it is a statement indicating that one is having financial difficulty at best. The Court would have to give the words a strained construction in order to find them actionable for a defamation claim. See Id. at *26.

Furthermore, Mr. Hai allegedly blogging that Plaintiff accused him of misleading her is not defamatory as a matter of law. It does not imply any "public hatred, shame, obloquy, etc." to Plaintiff. See Id. at *23. Rather, it speaks of potential wrongdoing of Mr. Hai, which is not actionable by Plaintiff.

Plaintiff also alleges that the following statement is defamatory:

> [W]hat disgusted me most was that Sang Lan allowed Huang Jian to sexually ill-treat her dog Xiaomei. That day during a meal at their home, the two of them said that Xiaomei had a strong sex drive, and always rode on Huang Jian. Sang Lan said Huang Jian wanted to sexually assault Xiaomei by wearing condoms. I immediately said 'Shut up!' I could not listen to that any more. It was disgusting. I am a determined animal defender. Have they no shame? Since then, I particularly disliked them.

McCarthy Decl., Exhibit "A" at ¶ 17. However, there is nothing in the aforementioned statement that any reader could find defamatory as to Plaintiff. Rather, the Court would have to provide an artificial construction to find that the statement defamed Plaintiff. See supra Biro, 2012 U.S. Dist. LEXIS 112466 at *26. As discussed below, given the statement's context, the statement constitutes Mr. Hai's opinion as to why he dislikes Plaintiff and Huang Jian, which is non-actionable.

Last, Plaintiff claims that Defendant stating during an interview, "Lang San provided me falsified evidence for her case" was defamatory.  See McCarthy Decl., Exhibit "A" at ¶ 27.  This statement also does not subject Plaintiff to public hatred, shame, obloquy or induce an evil opinion of Plaintiff in the minds of right-thinking persons.  In fact, this statement does not even allege that Plaintiff falsified evidence, or had knowledge that any of the evidence she provided to Defendants was allegedly falsified.  At worst, this statement alleges Plaintiff provided evidence to Defendants that was false, regardless of whether Plaintiff knew such evidence was false, or falsified such evidence herself.  To find a defamatory meaning in this statement requires giving it a strained construction.  See supra Biro, 2012 U.S. Dist. LEXIS 112466 at *26.  As such, this statement is not defamatory on its face.

### a.  Expressions of Opinion Never Constitute Defamation

"'Under both New York and federal law, statements of pure opinion are not actionable as defamation.'"  See supra Biro, 2012 U.S. Dist. LEXIS 112466, at *33 (citing supra Qureshi, 430 F. Supp. 2d at 288, quoting Gross v. New York Times Co., 82 N.Y.2d 146 (1993)).  Expressions of opinion are deemed privileged no matter how offensive the statement is.  See Mann v. Abel, 10 N.Y.3d 271, 276 (N.Y. 2008).  Whether a statement is fact or opinion is a question of law. See Id.  The following factors are to be considered in determining whether a statement is one of fact or opinion: "'(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal … readers or listeners that what is being read or heard is likely to be opinion, not fact.'"  See Id. (quoting Brian v. Richardson, 87 N.Y.2d 46, 51 (N.Y. 1995), quoting Gross v. New York Times Co., 82 N.Y.2d

146, 153 (N.Y. 1993), (quoting Steinhilber v. Alphonse, 68 N.Y.2d 283, 292 (N.Y. 1986) [internal quotation marks omitted]).

### 1.   The Alleged Defamatory Statements are Statements of Opinion and/or Imaginative Expression

When the statement read in context is "readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact."  See Levin v. McPhee, 119 F.3d 189, 197 (2d Cir. 1997).  Furthermore, "statements of 'rhetorical hyperbole' or 'imaginative expression' are held not actionable, because they 'cannot reasonably be interpreted as stating actual facts' that could be proved false."  See supra Biro, 2012 U.S. Dist. LEXIS 112466, at *37 (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990)).  However, statements of opinion which are based on undisclosed fact may be actionable, because it would be inferred that the speaker or writer knows facts unknown to the audience.  Id. at 37-38.

Several of the defamatory statements that Plaintiff alleges Mr. Hai published on "Tencent Weibo" are opinion and not fact.  First, the statement that Mr. Hai allegedly wrote on "Tencent Weibo" indicating "She [Lan Sang] also told me how bad my wife is and how nice she is" is not susceptible to a defamatory meaning.  See supra Levin, 119 F.3d at 195; James v. Gannett Co., 40 N.Y.2d 415 (1976); supra Biro, 2012 U.S. Dist. LEXIS 112466, at *25; McCarthy Decl., Exhibit "A" at ¶ 15.  In addition, the statement is nothing more than Mr. Hai repeating Plaintiff's opinion.  See Biro, 2012 U.S. Dist. LEXIS 112466, at *33.  First, the way the statement is written is not necessarily readily understood.  See supra Mann, 10 N.Y.3d at 276.  Second, whether an individual is "bad" or "nice" is not capable of being proven true or false, because it is clearly a matter of opinion.  See Id.  Based on the aforementioned, the defamation claim based on this above statement must be dismissed.

- 10 -

In addition, the following statement constitutes Defendant's opinion regarding why he dislikes Plaintiff:

> what disgusted me most was that Sang Lan allowed Huang Jian to sexually ill-treat her dog Xiaomei. That day during a meal at their home, the two of them said that Xiaomei had a strong sex drive, and always rode on Huang Jian. Sang Lan said Huang Jian wanted to sexually assault Xiaomei by wearing condoms. I immediately said 'Shut up!' I could not listen to that any more. It was disgusting. I am a determined animal defender. Have they no shame? Since then, I particularly disliked them.

McCarthy Decl., Exhibit "A" at ¶ 16. Looking at the statement as a whole, other than giving Mr. Hai's opinion as to why he dislikes Plaintiff and Huang Jian, there is no precise meaning behind the statement that is readily understood. See supra Mann, 10 N.Y.3d at 276. In addition, looking at the full context of the statement, it is clear to the reader that what is being conveyed is Mr. Hai's opinion as to why he dislikes Plaintiff and Huang Jian. Id. The reason why someone dislikes another is clearly a matter of opinion, rather than fact. Last, this statement concerns Huan Jian, and is not "of or concerning" Plaintiff as is required to sustain a cause of action for defamation. See supra Biro, 2012 U.S. Dist. LEXIS 112466, at *23. Therefore, any allegations of defamation arising from the aforementioned alleged statement must be dismissed.

The next alleged defamatory statement written on "Tencent Weibo" that is also nothing more than Mr. Hai's opinion as matter of law is: "Would I accept this mistress? I helped her because I didn't think I was a nice guy, and I would like to help the disabled to accumulate virtue for myself. But, out of expectation, I got bitten by the snake." See McCarthy Decl., Exhibit "A" at ¶ 17. The aforementioned statement meets all of the factors the New York courts use to determine whether a statement is fact or opinion. First, there is no precise meaning behind the statement that is readily understood, rather it is clearly the opinion of the speaker regarding why he helped Plaintiff. See supra Mann, 10 N.Y.3d at 276. This statement is also not capable of

- 11 -

being proven true or false.  See Id.  Last, looking at the full context of the statement signals to readers that what is being read is Mr. Hai's opinion.  See Id.  Furthermore, Mr. Hai indicating that he got "bitten by the snake" is clearly his imaginative expression regarding how he feels about Plaintiff.  Thus, any allegations of defamation stemming from this statement must be dismissed as a matter of law.

### 2. The Alleged Defamatory Statements are Statements of Opinion Due to their Broader Context

When considering the above statements in their broader context, it is further evident that they are statements of opinion published on a blog as opposed to statements of fact.    "In distinguishing between actionable factual assertions and nonactionable opinion, the courts must consider the content of the communication as a whole, as well as its tone and apparent purpose." See supra Brian, 87 N.Y.2d at 51.  Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made to determine on that basis "whether the reasonable reader would have believed that the challenged statements were conveying facts."  In addition to the context in which the disputed words appear, courts must also take into consideration the larger context in which the statements were published, including the nature of the particular forum.  See Id. at 51-52.

In circumstances when the context is a vehicle for expression of an individual opinion, rather than a rigorous and comprehensive presentation of factual matter, no defamation will lie. See Id.  According to Plaintiff, the alleged defamatory statements at issue were by published on a blog.  Defamation claims from statements posted on blogs have been evaluated by the courts to ascertain their broader context.  Blogs have been found to constitute forums for shared opinions where readers can post comments and engage in a dialogue of rebuttals and refutations in

response to previous posts.  See Kuersteiner v. Schrader, 2008 N.Y. Misc. LEXIS 10784, at *9-10 (N.Y. Sup. Ct. Oct. 14, 2008).  In Kuersteiner, the court noted the Complaint's attempts to sift through the alleged defamatory post at issue in an effort to isolate statements claimed to be assertions of fact.  See Id.  However, the court found that when the statements plead were viewed in the broader context of the blog, "no reasonable person would interpret the comments as anything but the authors' opinion."  See Id.  The Complaint here attempts to isolate the alleged defamatory statements at issue.  When viewing the statements at issue in this litigation in their broader context as postings in a blog, similarly it is evident no reasonable person could interpret them as anything but the authors' opinion.  As such, the alleged defamatory statements which are expressions of opinion, false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions.  See Id. (citing Steinhilber v Alphonse, 508 N.Y.S.2d 901 (1986).

**b.  Pleading Libel Requires Pleading Entitlement to Special Damages**

To sustain a cause of action for defamation a Plaintiff must plead entitlement to special damages.  See supra Biro, 2012 U.S. Dist. LEXIS 112466, at *23 (citing Celle v. Filipino Reporter Enters., 209 F.3d 163, 176 (2d Cir. 2000).   Special damages must be fully and accurately stated.  See Drug Research Corp. v. Curtis Publishing Co., 7 N.Y.2d 435, 440-441 (1960).  The mere pleading of damages in a round amount, with no attempt at itemization, must be deemed to be a representation of *general damages*.  See Id. (emphasis added).  Plaintiff's Second Amended Complaint alleges Plaintiff lost sponsorships with "China Baojian; Qiaodan; Sina.Com; VOD one; China Sport Lottery; Huayi Publishing Co.; Sang's Blog; and Beijing Red Banana" each in the amount of respectively "$48,154.09; $6,420.55; $160,513.64; $96,308.19; $64,205.46; $41,733.55; $48,154.09; and $40,128.41."  See McCarthy Decl., Exhibit "A" at ¶35.

To establish special damages, there must be a causal link or connection between the alleged defamatory statement and the damages plead.  Where no causal connection between the statement and special damage exists, there can be no defamation.  See Pisani v. Staten Island University Hospital and Ferreri, 2008 U.S. Dist. LEXIS 30855, *59 (E.D.N.Y. 2008).  Moreover, the special damages "must flow directly from the injury to reputation caused by the defamation; not from the effects of defamation."  See Matherson v. Marchello, 100 A.D.2d 233, 235 (N.Y. 2d Dep't 1984).  The Complaint fails to allege Plaintiff's sponsors were even aware of the alleged defamatory statements published on Defendants' blog.  See McCarthy Decl., Exhibit "A" generally.  At best, the Complaint contains conclusory allegations, such as Plaintiff lost "the foregoing sponsorships without payment due to the defamatory statements by Defendants." While Plaintiff is entitled to a generous reading of the Complaint, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. See Biro v. Conde Nast, 2012 U.S. Dist. LEXIS 112466, at *20-21 (S.D.N.Y. 2012) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  Plaintiff fails to plead any basis or fact to support that Defendants' alleged statements were the legal cause of Plaintiff's lost sponsorships. Furthermore, courts have held that a breach of contract cannot be regarded as the legal consequence of libel.  See The Reporters' Ass'n of America v. The Sun Printing and Publishing Ass'n, 186 N.Y. 437, 443 (1906).  When the alleged special damage consists of a violation of a contract, the plaintiff may discharge the obligation, and then recover damages in a tort action against the breaching party for non-performance. See Kendall v. Stone, 5 N.Y. 14, 21 (1851).  If Plaintiff has a legal remedy to pursue against the breaching sponsors, she should not be entitled to sustain a cause of action against Defendants to recover windfall damages.  Accordingly,

Plaintiff fails to plead sufficient special damages and the cause of action for defamation must be dismissed.

### c.  **Plaintiff fails to Plead Libel Per Se**

The only means of bypassing the requirement of pleading special damages, in a defamation action, is if the alleged libelous statement is defamatory on its face.  See supra Biro, 2012 U.S. Dist. LEXIS 112466, at *23.  For a statement to qualify as libelous *per se*, the statement must either: charge the individual with a serious crime; tend to injure them in their trade, business or profession; claim they had a loathsome disease; or impute unchastity on a woman.  See Phelan v. Huntington Tri-Village Little League, Inc., 16 Misc. 3d 1138A, 8 (N.Y. Sup. Ct. 2007) (citing Liberman v. Gelstein, 80 N.Y.2d 429, 605 N.E.2d 344, 590 N.Y.S.2d 857 (1992)).  None of the statements alleged to be defamatory by Plaintiff fall under these categories. See McCarthy Decl., Exhibit "A" generally.

Plaintiff's Second Amended Complaint alleges that the statement that Plaintiff told Mr. Hai that she would become Mr. Hai's mistress if Huan Jian abandoned her constitutes defamation per se.  See Id. at ¶¶ 14-15.  This argument lacks merit as there is decisive authority in New York that disposes of this defamation claim as a matter of law.  For instance, to sufficiently impute the quality of unchastity on a woman, the charge that she made advances to a man or was oversexed does not imply she is unchaste.  See Hyatt v. Salisbury, 207 Misc. 785, 788 (N.Y. Sup. Ct. 1955); see also Pearlstein v. Draizin, 190 Misc. 27, 28 (N.Y. Sup. Ct. 1947) (holding that although imputing unchastity to a woman is actionable per se, without further averment, and without proof of special damages, charging a woman with being a "bum" or a "tramp" is not actionable per se, unless an innuendo is pleaded to explain the meaning of the language used and to show that it was used in a defamatory sense).  No further innuendo or

extrinsic information is alleged by Plaintiff in the Complaint to support a further averment to establish a defamatory meaning.

The statement that Plaintiff would become Mr. Hai's mistress if Huan Jian abandoned her is furthermore not defamatory, as it is not a statement that may be proved true or false.  See Gross v. New York Times Co., 82 N.Y.2d 146, 153 (N.Y. 1993).   This statement is conditioned on a future event.  "Since falsity is a necessary element of a defamation cause of action and only "facts" are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamartion action."  See Id.  Imaginative expressions of future events that are incapable of being proved true or false are therefore nonactionable, as they are not facts.

Plaintiff further alleges that the statement "Would I accept this mistress?  I helped her because I didn't think I was a nice guy, and I would like to help the disabled to accumulate virtue for myself.  But, out of expectation, I got bitten by the snake" is also defamatory per se.  See McCarthy Decl., Exhibit "A" at ¶¶18-19.  In addition to this statement being one of opinion as well as imaginative expression, as discussed above, this statement is not defamatory per se as a matter of law.  Calling someone a name such as "tramp" or "mistress" is not sufficient in and of itself to establish unchastity or defamation per se unless it pleads an innuendo to explain the meaning of the language.   See Pearlstein v. Draizin, 190 Misc. 27, 28 (N.Y. Sup. Ct. 1947).  For the above-stated reasons, these statements fail to qualify as libelous per se, require special damages to be actionable, and are not defamatory as a matter of law.

### d.  Fair and True Reports of Judicial Proceedings are Non-Actionable

Plaintiff alleges that on October 11, 2011, Mr. Hai made misstatements during a press conference related to a lawsuit that Mr. Hai filed against Plaintiff in the Civil Court of the City of

New York.  See McCarthy Decl., at ¶¶ 24-25.  "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding . . ."  N.Y. Civ. Rights Law § 74. The purpose of Civil Rights Law § 74 is to encourage and protect reports of judicial proceedings. See Cholowsky v. Civiletti, 69 A.D.3d 110, 114 (2d Dep't 2009).  "'The case law has established a liberal interpretation of the 'fair and true report' standard of Civil Rights Law § 74 so as to provide broad protection to news accounts of judicial or other official proceedings.'"  See Id. (quoting Becher v. Troy Pub. Co., 183 A.D.2d 230, 233 (N.Y. 1992)).  In addition, the report is considered "fair and true" within the meaning of the statute, as long as the substance of the article is substantially accurate.  See Id. (citing Holy Spirit Asso. for Unification of World Christianity v. New York Times Co., 49 N.Y.2d 63, 67 (N.Y. 1979)).  Thus, a substantially accurate report will immunize the publisher from a libel suit.  See Id.  Furthermore, it is not required that the publication set forth the Plaintiff's side of the controversy.  See Id. at 115.

Plaintiff alleges that during an October 11, 2011 press conference, Mr. Hai made the following false statements, "I won prosecution for delinquent legal fees for all 12 charges against Lan Sang" and "because defendant [Lan Sang] did not appear in Court, the Court granted default judgment, a default judgment means that all of our prosecution was approved, and the counterclaims of Defendant were rejected.  We sued for 12 charges; each charge for $25,000; so we won $300,000."  See McCarthy Decl., Exhibit "A" at ¶¶ 24-25.  At the time the aforementioned statements were allegedly made, Plaintiff had defaulted by failing to appear at a scheduled bench trial in an action brought by Mr. Hai on behalf of himself and Ming Hai, P.C., against Plaintiff in the Queens County Civil Court titled Ming Hai & Ming Hai, P.C. v. Lan Sang, Docket No. CV-078233-11/QU.  See McCarthy Decl., Exhibits "C," "D" and "E."  The

Complaint filed by Mr. Hai sought $25,000 on each of the 12 counts in the Complaint.  See Id. at Exhibit "C."  The matter against Plaintiff was scheduled for inquest on or about January 25, 2012.  See McCarthy Decl., Exhibit "A" at ¶ 26.  Thus, in the event a default was entered, the total amount awarded would have been $300,000.  See Id.  Therefore, Mr. Hai's alleged statement regarding the outcome of the Court proceeding on October 11, 2011, was a fair and true report of what transpired in court.  See Cholowsky, 69 A.D.3d at 114.  For the foregoing reasons, any claim arising out of Defendant's reporting of the outcome of the October 11, 2011 court proceeding must be dismissed as a matter of law.  See N.Y. Civ. Rights Law § 74.


## POINT III

### PLAINTIFF'S SECOND CAUSE OF ACTION FOR BREACH OF NY CIV. RIGHTS LAW §§ 50-51 MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

New York Civil Rights Law §§ 50-51 provides that it is unlawful to use another person's image, likeness or voice without their permission for purposes of advertising or trade.  Civil Rights Law §§ 50 and 51 were drafted narrowly to encompass only the commercial use of an individual's name or likeness, and no more.  See  Arrington v. New York Times Co., 55 N.Y.2d 433, 439, *cert denied* 459 U.S. 1146 (1983).  "Advertising purposes" has been defined as use in, or as part of, an advertisement or solicitation for patronage of a particular product or service.  See Leary v. Punzi, 179 Misc. 2d 1025, 1027 (N.Y. Sup. Ct. 1999) (citing Beverley v. Choices Women's Medical Center, Inc., 78 N.Y.2d 745 (N.Y. 1991)).   "Trade purpose," although considered more difficult to define, involves use, which would draw trade to a firm.  See Id. at 1027 (citing Flores v. Mosler Safe Co., 7 N.Y.2d 276, 284 (N.Y. 1959)).

Plaintiff alleges that Defendant published photographs of her on his blog without her permission. See McCarthy Decl., Exhibit "A" at ¶ 36. Plaintiff then states in conclusory fashion, "[t]he publications were a way that Plaintiff conducted his public advertising in order to gain recognition from the fame of Plaintiff." See Id. at ¶ 36. The aforementioned conclusory statements do not meet the pleading standards for invasion of privacy. See Mills v. Miteq, Inc., 2007 U.S. Dist. LEXIS 76488 (E.D.N.Y. 2007) (dismissing an invasion of privacy claim where specific allegations were not alleged). In addition, the existence of a generalized profit motive, as alleged by Plaintiff, is not sufficient to make out an invasion of privacy claim. Rather, Plaintiff must allege that defendant charged a fee and generated revenue through the alleged invasion of privacy. See Cerasani v. Sony Corp., 991 F. Supp. 343 (S.D.N.Y. 1998). No such allegations have been asserted herein. Nowhere does Plaintiff even plead that Defendants managed the blog at issue in their professional capacity. At best, Plaintiff pleads that Defendants operate a "law blog" otherwise known as a "blwag" which in no way limits any statements or postings to advertising or trade. In fact, blogs regularly may be posted to generate discussions on certain topics and areas of social events and news. See Kuersteiner v. Schrader, 2008 N.Y. Misc. LEXIS 10784, *9-10 (N.Y. Sup. Ct. Oct. 14, 2008).

Moreover, the statements allegedly published without Plaintiff's permission make no mention of Mr. Hai's relationship to Plaintiff, or any services rendered to Plaintiff. See McCarthy Decl., Exhibit "A." As a result, the Complaint fails to plead that the use of Plaintiff's image had anything to do with the products or services being offered by Defendants. The incidental mention of a person's name in paid advertising space giving commentaries or reports wholly unrelated to the advertiser's product or business, even if designed to attract attention to adjacent advertising matter, does not constitute a "use" of such name "for advertising purposes or

- 19 -

for the purposes of trade." See supra Flores v. Mosler, 7 N.Y.2d at 282 (citing Wallach v. Bacharach, 192 Misc. 979 (N.Y. Sup. Ct. 1948)).   The statements and publications alleged by Plaintiff to constitute a breach of her civil rights make no mention of, or reference to Mr. Hai's services as her attorney.   The statements alleged by Plaintiff to be defamatory constitute Defendants' social opinion of Plaintiff, and do not concern Defendants' business or Defendants' representation of Plaintiff.   As such, Plaintiff fails to plead the use of her name or likeness was for advertising or trade purposes, and the claim must be dismissed.

Furthermore, in certain circumstances, courts have carved out exceptions so that New York Civil Rights Law §§ 50-51 do not apply to publications concerning newsworthy events or matters of public interest.   See Creel v. Crown Publishers, Inc., 115 A.D.2d 414 (1st Dep't 1985).   Recovery under Civil Rights Law §§ 50-51 is strictly limited to nonconsensual commercial appropriations that do not apply to newsworthy events or matters of public interest. See Walter v. NBC Tel. Network, Inc., 27 A.D.3d 1069, 1070 (4th Dep't 2006); Messenger v. Gruner + Jahr Printing & Publ'g, 94 N.Y.2d 436, 441 (N.Y. 2000); Howell v. New York Post Co., 81 N.Y.2d 115, 123 (N.Y. 1993).   "This is because a newsworthy article is not deemed produced for the purposes of advertising or trade.   Additionally, these principles reflect 'constitutional values in the area of free speech.'"   See supra Messenger, 94 N.Y.2d at 441 (quoting Howell, 81 N.Y.2d at 123)).   In addition, the New York courts have held that "newsworthiness" is to be broadly interpreted.   See Id.   "Newsworthiness includes not only descriptions of actual events but also articles concerning political happenings, social trends or any subject of public interest."   See Id. (internal citations omitted).   See also supra Beverley, 78 N.Y.2d at 752.

Allegations that Mr. Hai published a photograph of Plaintiff next to the aforementioned blog entries do not constitute an invasion of privacy pursuant to New York Civil Rights Law §§ 50-51.  Rather, besides the aforementioned allegations being conclusory, any publication of Plaintiff's photograph in Mr. Hai's blog entries was for newsworthy purposes.   See supra Walter, 27 A.D.3d at 1070; supra Messenger, 94 N.Y.2d at 441; supra Howell, 81 N.Y.2d at 123; supra Beverley, 78 N.Y.2d at 752.   Thus, for the foregoing reasons, Plaintiff's cause of action alleging a breach of New York Civil Rights Law §§ 50-51 must be dismissed.


**POINT IV**

**PLAINTIFF'S THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

"To recover on a breach of contract claim under New York law, a plaintiff must establish: "(1) the existence of a valid contract; (2) due performance by the plaintiff; (3) breach by the defendant; and (4) damages to [plaintiff] caused by the breach.""  See Barbara v. Marinemax, Inc., 2012 U.S. Dist. LEXIS 171975, *51 (E.D.N.Y. 2012) (citing DLJ Mortg. Capital Inc. v. Home Loan Corp., 667 F. Supp. 2d 368, 368 (S.D.N.Y. 2009).  Plaintiff pleads a contractual relationship existed with Defendants by virtue of their attorney-client relationship.   See McCarthy Decl., Exhibit "A" at ¶ 53.  Plaintiff fails to allege how Defendants breached said contract, and further fails to specify how and when Plaintiff and Defendants' attorney-client relationship started or terminated.  Furthermore, the breach of contract claim is duplicative of the breach of fiduciary duty claim, and is subject to dismissal.  See supra Barbara v. Marinemax Inc., 2012 U.S. Dist. LEXIS 17195, at *24-25 citing Atlantis Info. Tech., GmbH v. CA, Inc., 485 F. Supp. 2d 224, 232 (E.D.N.Y. 2007).  When a breach of fiduciary duty claim arises from the same

duties as the breach of contract claim, the claims are duplicative.  See Id.  As such, Plaintiff fails to plead a valid claim for breach of contract, and the claim must be dismissed.


## POINT V

### PLAINTIFF'S FOURTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

It has been held that inducing a breach of a binding agreement and interfering with a non-binding economic relation can both be torts.  See Guard-Life Corp. v. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 193-94 (1980); see also NBT Bancorp. v. Fleet/Norstar Fin. Group, 87 N.Y.2d 614, 621 (1996); Carvel Corp. v. Noonan, 3 N.Y.3d 182, 189 (2004).  According to the Second Restatement of Torts, an individual is liable for tortious interference with a contract when they "intentionally and improperly interfere with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract."  See RESTATEMENT (SECOND) OF TORTS § 766 (1979).  The elements of a cause of action for tortious interference with a contract are: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff."  See Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993), (quoting Israel v. Wood Dolson Co., 1 N.Y.2d 116, 120 (1956)).

In the instant matter, it is alleged that Mr. Hai made defamatory statements about Plaintiff to induce purported third-party sponsors to breach their endorsement contracts with Plaintiff.  See McCarthy Decl., Exhibit "A" at ¶ 61.  Plaintiff summarily concludes Defendants had knowledge of the purported sponsorships by virtue of their relationship with Plaintiff as her

attorney.  <u>See</u> McCarthy Decl., Exhibit "A" at ¶ 60.  Plaintiff's attempt to charge Defendants with constructive knowledge by virtue of their relationship, is insufficient to sustain a cause of action for tortious interference with contractual relations, as *actual knowledge* is required.  <u>See</u> <u>Business Lenders, LLC v. PKR Stores, LLC</u>, 2010 N.Y. Misc. LEXIS 4923, at *16 (N.Y. Sup. Ct. Sept. 28, 2010) (*emphasis added*).  Plaintiff fails to plead any facts or circumstances under which Defendants could be charged with actual knowledge of the subject sponsorships.  <u>See</u> McCarthy Decl., Exhibit "A" generally.  Plaintiff fails to plead Defendants had any involvement with the negotiations or agreements reached between Plaintiff and the sponsors. See <u>Id</u>. Plaintiff's failure to properly plead actual knowledge on behalf of Defendants is critical to her claim, and as such it should be dismissed in its entirety.

Regardless, even affording Plaintiff the most liberal reading of the Complaint she still fails to properly plead a claim for tortious interference with contractual relations.  Plaintiff fails to properly plead that the alleged sponsors actually breached their contracts with Plaintiff.  At best, Plaintiff pleads the sponsors walked away, which courts have held to be insufficient to sustain a cause of action for tortious interference with contracts.  <u>See</u> <u>Kirch v. Liberty Media Corp.</u>, 449 F.3d 388, 402 (2d Cir. 2006) (holding when plaintiff pleaded the third-party 'walked away' and the project 'fell apart' the plaintiff failed to sufficiently plead the third-party breached the subject contract, and as such the critical element of breach was not satisfied.  Thus, the claim for tortious interference with contracts was properly dismissed).  Plaintiff further fails to plead that '"there would not have been a breach but for the activities of defendants."'  <u>See</u> <u>Natural Res. Media & Tech. Group, LLC v. Snoop Youth Football League Found.</u>, 2008 U.S. Dist. LEXIS 20642, *7-8 (S.D.N.Y. 2008) (holding to succeed on a claim of tortious interference with a contract the plaintiff must allege there would not have been a breach but for the defendant's

- 23 -

conduct).  When an interference occurs but is merely incidental to the exercise of some other lawful purpose, no cause of action for tortious interference with contractual relations can stand. See Drummond v. Morgan Stanley & Co., 1996 U.S. Dist. LEXIS 16137, at *3 (S.D.N.Y. Oct. 30, 1996).  Based on the aforementioned, Plaintiff's claim for tortious interference with contracts must be dismissed as a matter of law.

<div align="center">

**POINT VI**

**PLAINTIFF'S FIFTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

</div>

Under New York law, a third party's interference with a prospective business relationship that has not been reduced to a contract is actionable only in *limited* circumstances.  See Catskill Dev., L.L.C. v. Park Place Entm't Corp., 345 F. Supp. 2d 360, 363 (S.D.N.Y. 2004) (*remanded and vacated on other grounds, and later aff'd by* Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 137 (2d Cir. 2008)) (*emphasis added*).  The tort of tortious interference with business relations applies to situations in which no enforceable contract exists, and a defendant induces or otherwise causes a third-party not to enter into or continue the prospective relationship with the plaintiff.  See WFB Telecommunications, Inc. v. NYNEX Corp., 188 A.D.2d 257 (1st Dep't 1992); Rsa Distribs. v. Contract Furniture Sales, 248 A.D.2d 370, 371 (2d Dep't 1998).  See generally RESTATEMENT (SECOND) OF TORTS § 766B (1979).  In claims for tortious interference with prospective business relations, the Plaintiff must prove more culpable conduct on the part of the defendant than in tortious interference with contracts.   See supra NBT Bancorp., 87 N.Y.2d at 621.

To properly plead a claim for intentional interference, the alleged interference must constitute direct interference with a third party, meaning "the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." See Black Radio Network, Inc. v. NYNEX Corp., 2000 U.S. Dist. LEXIS 594, at *13 (S.D.N.Y. 2000). The means by which the defendant interferes with the third-party must constitute:

> culpable conduct, which can mean one of two things: (1) The defendant acted for the sole purpose of inflicting intentional harm on the plaintiffs. Actions taken to promote the economic interest of the defendant are not taken for the sole purpose of harming the plaintiff[5]; or (2) The defendant effected the interference by "wrongful means."

See supra Catskill Dev., L.L.C. v. Park Place Entm't Corp., 345 F. Supp. 2d at 363. Wrongful means may "include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions and some degrees of economic pressure." See supra Guard-Life Corp, 50 N.Y.2d at 191.

Plaintiff alleges that Defendants interfered with her negotiations with Disney for an endorsement contract. However, Plaintiff fails to plead Defendants had any knowledge of the prospective negotiations Plaintiff was engaged in with Disney. In addition, Plaintiff also failed to specifically allege how Defendants interfered with her negotiations with Disney. Nowhere in the Second Amended Complaint is it plead that Defendants actively directed any activities towards Disney in an attempt to interfere with Disney and Plaintiff's prospective business relationship. See McCarthy Decl., Exhibit "A" generally.

---

[5] The Complaint in fact pleads the opposite and alleges that Defendants posted information about Plaintiff to promote their own economic interest, effectively eliminating Plaintiff's argument that Defendants undertook any course of conduct for the sole purpose of interfering with Plaintiff's prospective business relations. See McCarthy Decl., Exhibit "A" at ¶46.

Furthermore, any claim that Plaintiff is attempting to assert for tortious interference with business relations fails as the alleged defamatory statements that Plaintiff relies on to assert a claim of tortious interference with business relations do not show "wrongful means" by Mr. Hai, such as physical violence, fraud or misrepresentation, civil suits and criminal prosecutions or some degrees of economic pressure.   See Guard-Life Corp, 50 N.Y.2d at 191.  Plaintiff has failed to allege any facts to demonstrate that any of the alleged statements or conduct by Mr. Hai were the proximate cause of her failure to obtain a new sponsorship contract.  See Pacheco v. United Med. Assocs., P.C., 305 A.D.2d 711, 712 (3d Dep't 2003); Waste Servs., Inc. v. Jamaica Ash & Rubbish Removal Co., 262 A.D.2d 401, 402 (2d Dep't 1999).  As Plaintiff even fails to plead when the purported business relation existed, she thus fails to demonstrate that the relationship existed *at the time of the alleged interference* which is required to establish causation.  See Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir. 1998) (holding a relationship must exist at the time of the alleged interference).  Thus, any claim for tortious interference with business relations or contracts must be dismissed as a matter of law.

## POINT VII

### PLAINTIFF'S SIXTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

To state a claim for breach of fiduciary duty, Claimant must plead (1) that a fiduciary duty existed between the parties; (2) that the Defendant breached that duty; and (3) that damages were incurred as a result.  See Kurtzman v. Bergstol, 40 A.D.3d 588, 590 (2nd Dep't 2007).  Although an attorney/client relationship may be a fiduciary relationship, not all communications to an attorney are privileged.  See Omni Health & Fitness Complex of Pelham, Inc. v P/A-

<u>Acadia Pelham Manor, LLC</u>, 33 Misc. 3d 1211A (N.Y. Sup. Ct. 2011).  "As with respect to the lawyer-client privilege . . . 'it is vital . . . that the communications between client and attorney were made in confidence and have been maintained in confidence.'"  <u>See</u> <u>Brennan Ctr. For Justice at N.Y. Univ. Sch. of Law v. United States D.O.J.</u>, 2012 U.S. App. LEXIS 19685, at *61 (2d Cir. Sept. 19, 2012) (citing <u>United States v. Mejia</u>, 655 F.3d 126, 134 (2d Cir. 2011), quoting <u>In re Horowitz</u>, 482 F.2d 72, 81-82 (2d Cir. 1973)).   Courts have found waiver of a privilege when a client asserts reliance on an attorney's advice as an element of a claim or defense.  <u>See</u> <u>Id</u>.

Plaintiff alleges that Mr. Hai breached a fiduciary duty owed to her by disclosing confidential material in a blog and during press conferences.  <u>See</u> McCarthy Decl., Exhibit "A" at ¶ 70.  However, Plaintiff fails to identify the confidential material that Mr. Hai allegedly disclosed, how said information was disclosed and when said information was disclosed.  <u>See</u> McCarthy Decl., Exhibit "A" generally.  If Plaintiff seeks to rely on the alleged statements of Mr. Hai, which relate to: 1) her relationship with Mr. Hai; 2) Plaintiff's opinion of Mr. Hai's wife; 3) facts about her dog; and 4) Mr. Hai's opinion of Plaintiff, the same do not constitute those made in confidence seeking legal advice.  <u>See</u> McCarthy  Decl., Exhibit "A" at ¶¶ 14-17; <u>See also</u> supra <u>Brennan Ctr. For Justice at N.Y. Univ. Sch. of Law</u>, 2012 U.S. App. LEXIS 19685, at *61.  Furthermore, Plaintiff has failed to allege that she told Mr. Hai that she defaulted on her rent and stole keys during a confidential conversation seeking legal advice.  <u>See</u> <u>Id</u>.  In addition, while Plaintiff alleges that Mr. Hai disclosed to the public that Plaintiff commenced her lawsuit to obtain a green card, she does not identify the method, manner, date, or to whom such information was disclosed.  <u>See</u> McCarthy Decl., Exhibit "A" at ¶70 and generally.   Plaintiff

fails to plead this statement was a confidential communication made by her to Mr. Hai during the course of his representation of her.  See Id. generally.

Last, the claim for breach of fiduciary duty is redundant and duplicative of Plaintiff's claim for breach of contract as it is based on the same duty.  See Barbara v. Marinemax, Inc., 2012 U.S. Dist. LEXIS 171975, *24 (E.D.N.Y. 2012). Thus, any alleged disclosure of the same by Mr. Hai would not constitute a breach of the attorney/client privilege.  For the aforementioned reasons, Plaintiff's cause of action alleging a breach of fiduciary duty must be dismissed as a matter of law.


**POINT VIII**

**PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST BE DIMSISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Under New York law, a claim of intentional infliction of emotional distress requires pleading: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.  See Stevens v. State of New York, 691 F.Supp.2d 392, 399 (S.D.N.Y. 2009) (quoting Conboy v. AT&T, 241 F.3d 242, 258 (2d Cir. 2001) (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999).  The standard for stating a valid claim of intentional infliction of emotional distress is rigorous and difficult to satisfy.  See supra Stevens, at 399 (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 122 (N.Y. 1993). In order to plead a valid claim of intentional infliction of emotional distress, the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in civilized society.  See supra Stuto, 164 F.3d at 827.

Liability may only stand when the conduct is so outrageous in character as to go beyond all possible bounds of decency.  Plaintiff fails to plead any specific independent course of conduct for this cause of action.  Rather, Plaintiff asserts the basis for this claim includes "all allegations" set forth in the complaint.  See McCarthy Decl., Exhibit "A" at ¶79.  However, none of the acts Defendants are charged with in the Complaint are sufficiently outrageous to implicate and support a valid claim for intentional infliction of emotional distress.

Acts that form the basis of defamation claims tend not to rise to the level of outrageousness required for intentional infliction of emotional distress.  See McNamee v. Clemens, 2011 U.S. Dist. LEXIS 10664, *63 (E.D.N.Y. 2011).  Publishing information found in confidential court documents does not give rise to the level of extreme and outrageous conduct. See Id. at 65 (citing Freihofer v. Hearts Corp., 65 N.Y.2d 135 (1985)).  Allegations for breach of New York Civil Rights Law §§50-51 have also been found to be not sufficiently outrageous conduct to give rise to a claim for intentional infliction of emotional distress.  See supra Freihofer, 65 N.Y.2d at 144.  Furthermore, maliciously displaying nude photographs of an employee has been held not sufficiently outrageous to sustain an intentional infliction of emotional distress claim.  See supra McNamee, 2011 U.S. Dist. LEXIS 10664, *64.  Publishing unfavorable articles about a plaintiff is not outrageous conduct.  See Id. at *63.  The conduct at issue must be regarded as atrocious and intolerable in a civilized society, which is why many claims often fail because the alleged conduct is not sufficiently outrageous.  See Id. at *61.

Plaintiff's Complaint fails to plead sufficiently outrageous conduct that transcends the bounds of decency, or that is sufficient to validate her claim for intentional infliction of

emotional distress.  As such, Plaintiff's claim for intentional infliction of emotional distress must be dismissed.

## POINT IX

### PLAINTIFF'S EIGHTH CAUSE OF ACTION FOR A PERMANENT INJUNCTION MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

"The award of an injunction is not something a plaintiff is entitled to as a matter of right. Rather, it is within the broad discretion of the district court to grant or deny such relief."  See Hammer v. Trendl, 2003 U.S. Dist. LEXIS 623, at *6-7 (E.D.N.Y. Jan. 18, 2003) (citing Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68 (2d Cir. 1999).  Plaintiff improperly seeks the Court to grant a permanent injunction. See McCarthy Decl., Exhibit "A" at ¶97.  To obtain a permanent injunction, a party must establish: (1) success on the merits of its claim; (2) that it has suffered an irreparable injury; (3) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (4) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (5) that the public interest would not be disserved by a permanent injunction.  See Kaupp v. Church, 2011 U.S. Dist. LEXIS 105794 (S.D.N.Y. Sept. 19, 2011) (citing Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010). When a Plaintiff fails to allege irreparable harm and the absence of an adequate legal remedy, dismissal is warranted.  See Ashley MRI Mgt. Corp. v. Perkes, 2010 N.Y. Misc. LEXIS 1166, *11 (N.Y. Sup. Ct. 2010).

Plaintiff fails to state a claim for any cause of action against Defendants, and accordingly fails to sufficiently plead irreparable harm.  Additionally, Plaintiff fails to plead Defendants have continued to blog or engage in any other form of conduct on Tencent Weibo to necessitate the absence of an adequate legal remedy such as monetary damages.  Plaintiff's failure to

sufficiently plead a valid claim against Defendants precludes any need for injunctive relief. Accordingly, Plaintiff's claim for an injunction should be dismissed.

## POINT X

### IN THE ALTERNATIVE THIS CASE SHOULD BE TRANSFERRED TO THE CIVIL COURT OF THE CITY OF NEW YORK, COUNTY OF QUEENS

In the Second Amended Complaint, Plaintiff admits Defendants commenced an action against Plaintiff in the Civil Court of the City of New York prior to the commencement of this action. See McCarthy Decl., at Exhibit "A" ¶ 23. As such, this action should be transferred to the Civil Court of the City of New York to be considered along with Defendants' action against Plaintiff.

### A. "First-Filed" Rule

Where two courts have concurrent jurisdiction over an action involving similar parties and claims, courts will follow a "first-filed" rule, whereby the court which first has possession of the action decides it. See 800-Flowers, Inc. v. Intercontinental Florist, 860 F. Supp. 128 (S.D.N.Y. 1994); American Steamship Owners Mutual Protection and Indemnity Assoc., Inc. v. Lafarge North America, Inc., 474 F.Supp.2d. 474 (S.D.N.Y. 2007). Importantly, the rules do not require that there be identical parties in both cases, but merely require substantial overlap. See Spotless Enterprises, Inc. v. The Accessory Corp., 415 F.Supp.2d 203 (E.D.N.Y. 2006). Ming Hai & Ming Hai, P.C. v. Lan Sang, Docket No. CV-078233-11/QU involves the same exact parties as those involved in this litigation. See McCarthy Decl. at Exhibits "A" and "C."

The "first-filed" rule will not be followed where "special circumstances" justify a departure from the rule. Special circumstances that may justify a departure include "customer

actions," "improper anticipatory actions," and where the "balance of convenience and interest of justice" favors the second suit.  See supra Spotless Enterprises, 415 F.Supp.2d at 208.  In the instant action, none of the aforementioned "special circumstances" are present.

The New York Civil Practice Law and Rules ("CPLR") recognize similar grounds for case transfer and consolidation.  "[W]here common questions of law or fact exist, a motion to consolidate or for a joint trial pursuant to CPLR §602(a) should be granted absent a showing of prejudice to a substantial right by the party opposing the motion."  See CPLR §602(a); See also CPLR §3211(a)(4) (which provides that a party may move to dismiss causes of actions asserted against him on the grounds that there is another action pending between the same parties for the same causes of action in a court of any state of the United States).

**B.  Venue is proper in the Civil Court of the City of New York, Queens County**

Defendants commenced the City Court action by filing a Summons and Complaint on August 23, 2011, over one (1) year prior to the filing of the Summons and Complaint in this Court.  See McCarthy Decl. at Exhibit "C."  The claims asserted by Defendants and Plaintiffs substantially overlap.  See Id.; see also McCarthy Decl., at Exhibit "A."  The actions arise out of the same occurrence(s) - the defamation claims and relationship between the parties since terminating their attorney-client relationship - and common questions of fact and law clearly exist.  See Id.  As such, the City Court should decide both actions.  See supra Spotless Enterprises, 415 F.Supp.2d at 203.

No prejudice will result if the case is remanded to City Court.  Both cases are at the beginning stages of pleading and discovery.  No depositions have been held in either action.  See Hargrove v. Clark Equipment Co., 1984 U.S. Dist. LEXIS 20969, *3 (S.D.N.Y. 1984) (holding there was no prejudice in remanding the action to New York State Court when the case was in its

infancy and no discovery had been exchanged).  To require the parties to submit to multiple discovery requests and demands and depositions in cases involving similar causes of action would result in prejudice and would constitute a waste of judicial resources.  See Id. at *4.

In this case, the special circumstances favor transferring this matter to City Court.  The actions should not, and cannot proceed independently without substantial prejudice being visited upon the parties.  As such, this action should be transferred to City Court and consolidated with the current pending First-Filed action.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant judgment dismissing the Plaintiff's Second Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, or in the alternative transfer this action to Civil Court of the City of New York under the First-Filed rule, for attorneys fees and costs, and for such other and further relief as the Court deems just and proper under the circumstances.

Dated:  New York, New York
        January 28, 2013

WINGET, SPADAFORA &
SCHWARTZBERG, LLP
*Attorneys for Defendants Ming Hai and Law
Office of Ming Hai, P.C.*

By:     /s/  Dianna McCarthy
        Dianna D. McCarthy (DDM - 5099)
        Winget, Spadafora & Schwartzberg, LLP
        45 Broadway, 19th Floor
        New York, New York 10006
        (212) 221-6900
        (212) 221-6989 (facsimile)