UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

LAN SANG,

                Plaintiff,

       -against-

MING HAI and LAW OFFICE OF MING
HAI, P.C.

              Defendants.

-------------------------------------------------------------X

Civil Action No. 12-cv-07103 (JPO)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**SCHILLER LAW GROUP, P.C.**

John V. Golaszewski
130 West 42nd Street, Suite 1002
New York, New York 10036
(212) 768-8700

*Attorneys for Plaintiff Lan Sang*

Dated: New York, New York
      February 18, 2013

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………..……..…iii

PRELIMINARY STATEMENT……………………………………………………......…1

ALLEGATIONS OF THE COMPLAINT………………………..…...…………......…2

   A. Background……………………………………………………………….......2

   B. Defendant Hai's Defamatory Statements…………………………………..…...…2

ARGUMENT……………………………………………………………………......…4

I.     PLAINTIFF IS ENTITLED TO A DETERMINATION ON THE
MERITS OF HER CLAIMS AGAINST DEFENDANTS…………………………4

II.    DEFENTANTS' PUBLICATION OF FALSE AND MALICIOUS
STATEMENTS OF FACT CONSTITUTE DEFAMATION PER SE UNDER
NEW YORK LAW……………………………………………………………5

    A. STANDARD………………………………………………………....5

    B. THE DEFAMATORY STATEMENTS……………………………......…7

       I.    Defendant Hai's False Statement Alleging Plaintiff's
Encouragement and Allowance of Bestial Acts Constitutes
Defamation Per Se……………………………...………………..……....7

       II.   Defendant Hai's False Statements Alleging Criminal Activity on
the Part of Plaintiff Constitute Defamation Per Se…………….…..……12

       III.  Defendant Hai's False Statements Alleging That Plaintiff
Desired to be His Mistress Constitute Defamation Per Se…….....………14

       IV.  Defendant Hai's False Statements Concerning Defendants'
Judicial Proceedings Against Plaintiff Constitute Defamation…………15

III.   DEFENDANTS HAVE VIOLATED NEW YORK CIVIL
RIGHTS LAW §§50-51……………………………………………....………20

IV.  PLAINTIFF HAS ALLEGED A VALID CAUSE OF ACTION FOR
BREACH OF ONTRACT……………………………………………......22

V.   PLAINTIFF HAS ALLEGED VALID CAUSES OF ACTION FOR

TORTIOUS INTEREFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS……………………...……………………………….……....23

VII.   PLAINTIFF HAS ALLEGED A VALID CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY……………………………….…………24

VIII.   PLAINTIFF HAS ALLEGED A VALID CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS…………..………25

IX.   THIS ACTION IF PROPERLY BEFORE THIS COURT AND SHOULD NOT BE TRANSFERRED TO CIVIL COURT, QUEENS COUNTY ……………………...……...26

CONCLUSION…………………………………………………………….…27

# TABLE OF AUTHORITIES

## CASES

### United States Supreme Court

*Milkovich v. Lorain Journal Co.*
497 U.S. 1(1990)..................................................................................................12

*Rosenblatt v. Baer*
383 U.S. 75 (1966)..................................................................................................7

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)

### United States Court of Appeals

*Albert v. Loksen*
239 F.3d 256 (2d Cir. 2001) ...............................................................................7,29

*Celle v. Filipino Reporter Enters., Inc.*
209 F.3d 163 (2d Cir. 2000) ...........................................................................7,8, 29

*Conboy v. AT&T Corp.*
241 F.3d 242 (2d Cir. 2001) .................................................................................27

*Davis v. Ross*
754 F.2d 80 (2d Cir. 1985). ....................................................................................8

*Hochner v. Castillo-Puche*
551 F.2d 910 (2d Cir. 1977) .................................................................................13

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*
32 F.3d 697 (2d Cir. 1994) .....................................................................................6

*Levin v. McPhee*
119 F.3d 189 (2d Cir.1997) ..................................................................................11

*Mr. Chow of New York v. Ste. Jour. Azur S.A.*,
759 F.2d 219 (2d Cir. 1985) .................................................................................13

*Scutti Enter., LLC v. Park Place Enter. Corp.*,
F.3d 211 (2d Cir. 2003) .........................................................................................24

*Stuto v. Fleishman*, 164 F.3d 820,
(2d Cir. 1999)........................................................................................................27

*Zherka v. Amicone*
634 F.3d 642, Fn. 6 (2d Cir. 2011) ....................................................................8, 16

**United States District Courts**

*Belly Basics, Inc. v. Mothers Work, Inc.,*
95 F.Supp.2d 144 (S.D.N.Y.2000) ...........................................................11

*Bridge C.A.T. Scan Associates v. Ohio-Nuclear, Inc.,*
608 F.Supp. 1187 (S.D.N.Y. 1985) ...........................................................20

*Cersani v. Sony Corp.,*
991 F.Suppp. 343 (S.D.N.Y. 1998) ...........................................................23

*Colodney v. Continuum Health Partners, Inc.,*
No. 03-cv-7276, 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004) ...................................7

*D'Annunzio v. Ayken, Inc.*
876 F.Supp.2d 211 (E.D.N.Y. 2012) ...........................................................19

*D'Angelo-Fenton v. Town of Carmel*
470 F.Supp.2d 387 (S.D.N.Y. 2007) ...........................................................18

*Flentye v. Kathrein*
485 F.Supp. 2d 903 (N.D. Ill. 2007) ...........................................................10

*Glantz v. Cook United, Inc.*
499 F.Supp. 710 (E.D.N.Y. 1979) ...........................................................18

*Groden v. Random House, Inc.,*
No. 94 cv 1074 (JSM), 1994 WL 455555 (S.D.N.Y. Aug. 23, 1994) ...........................22

*Hoepker v. Kruger*
200 F.Supp.2d 340 (S.D.N.Y. 2002) ...........................................................21

*Kelly v. Marchiano,*
332 F.Supp.2d 687 (S.D.N.Y. 2004) ...........................................................6

*Scholastic, Inc. v. Stouffer*
124 F.Supp. 2d 836, (S.D.N.Y. 2000) ...................................................7, 15

World Wrestling Federation Entertainment, Inc. v. Bozell
142 F.Supp. 2d 514, (S.D.N.Y. 2001) ...................................................25, 28

iv

## State Courts

*600 West 115th Street Corp. v. Von Gutfeld,*
    80 N.Y.2d 130 (1992) ........................................................................................11

*Armstrong v. Simon & Schuster, Inc.,*
    85 N.Y. 2d 373 (1995) ........................................................................................8

*Atkins & O'Brien LLP v. ISS Intern. Service Sys., Inc.,*
    678 N.Y.S.2d 596 (1st Dep't 1998) ..................................................................23

*Beltrone v. General Schuyler & Co.,*
    675 N.Y.S.2d 198 (3rd Dep't 1998) ..................................................................26

*Brian v. Richardson*
    87 N.Y.2d 46 (1995) ..........................................................................................16

*Cleaveland v. Detweiler*
    18 Iowa 299 (1865) ............................................................................................10

*Dobies v. Brefka,*
    710 N.Y.S.2d 438 (3d Dep't 2000) ....................................................................25

*Dribble v. WROC TV Channel 8,*
    530 N.Y.S.2d 388 (4th Dep't 1988) ..................................................................19

*Gross v. New York Times Co.,*
    82 N.Y.2d 146 (1993) ........................................................................................12

*Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp.*
    50 N.Y.2d 183 (1980) ........................................................................................24

*Haynes v. Ritchey,*
    30 Iowa 76 (1870) ..............................................................................................10

*Holy Spirit Association for Unification of World Christianity v. New York Times Co.*
    49 N.Y.2d 6  (1979) ............................................................................................18

*Kimmerle v. New York Evening Journal*
    262 N.Y. 99 (1933) ........................................................................................7, 11

*Liberman v. Gelstein*
    80 N.Y.2d 429 (1992) ......................................................................................7, 8

Lightman v. Flaum
    97 N.Y.2d 128 (2001) ........................................................................................26

M.J. & K. Co., v. Matthew Bender and Co., Inc.
  631 N.Y.S.2d 938 (2d Dep't 1995)................................................................24

*Matherson v. Marchello,*
  473 N.Y.S. 2d 998 (2d Dep't 1984)..............................................................8

*Molina v. Phoenix Sound, Inc.*
  747 N.Y.S.2d 227 (1st Dep't 2002)..............................................................21

*Nacinovich v. Tullett & Tokoyo Forex, Inc.*
  Index No. 107778/96, 1998 WL 1050971, (N.Y. Sup., May 18, 1998)....................10

*Negron v. Rexam Cosmetic Packaging, Inc.*
  No. CV044000333S, 2006 WL 240528 (Conn. Super. Jan. 11, 2006)....................10

*Noise in the Attic Productions, Inc. v. London Records*
  782 N.Y.S.2d 1 (1st Dep't 2004)..................................................................23

*Ocean State Seafood, Inc. v. Capital Newspaper. Div. of Hearst Corp.,*
  492 N.Y.S.2d 175 (3d Dep't 1985).................................................................19

*Rand v. New York Times Co.,*
  75 A.D.2d 417 (1st Dep't 1980)..............................................................13, 28

*Roach v. Stern*
  675 N.Y.S. 2d 133 (2d Dep't 1998).............................................................27

*Steinhilber v. Alphonse,*
  68 N.Y.2d 283 (1986)...........................................................................12, 13

*U.S. Fire Ins. Co. v. Raia*
  942 N.Y.S.2d 543 (2d Dep't 2012)..............................................................26

## STATUTES

28 U.S.C. §1332.......................................................................................27

Civil Rights Law §74.................................................................................18

N.Y. Civ. Rights Law §§ 50-51..............................................................2, 20, 21

N.Y. Civil Rights Law § 77....................................................................7, 14

N.Y. Penal Code § 175.10..........................................................................13

N.Y. Penal Code § 175.25 ................................................................................13

N.Y. Penal Code § 175.30 ................................................................................13

N.Y. Penal Code §130.20 ..................................................................................8

Plaintiff Lan Sang ("plaintiff" or "Sang") respectfully submits this memorandum of law in opposition to defendants Ming Hai ("Hai") and the Law Office of Ming Hai, P.C. (collectively, "defendants") motion to dismiss plaintiff's Second Amended Complaint ("Complaint").[1]

## PRELIMINARY STATEMENT

This action arises out of a series of outrageous and defamatory statements that defendant Hai, a licensed attorney, published concerning plaintiff, an internationally renowned former world class gymnast who is also his former client. As set forth in the Complaint (¶¶ 14-27) and detailed below, defendant Hai's comments accused plaintiff of a variety of criminal activities, including theft and the falsification of evidence; accused her of encouraging and allowing bestial acts; accused her of unchasteness and attempting to seduce defendant Hai; and misrepresented to the press the status of legal proceedings to which she was a party. Not only does each and every statement published by defendants constitute defamation per se under New York law, but defendants' publication of these statements likewise forms the predicate for a breach of contract cause of action, as well as a variety of intentional torts, including breach of fiduciary duty, tortious interference with both contractual and prospective business relations, and intentional infliction of emotional distress. Moreover, defendant Hai's decision to publish these inflammatory and egregious statements along with photographs of the plaintiff constitutes a violation of New York Civil Rights Law, §§ 50-51.

As set forth below, plaintiff has sufficiently alleged each and every cause of action in the Complaint, and as such defendants motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied in its entirety.

---

[1] A true and correct copy of Plaintiff's Second Amended Complaint ("Compl.") is annexed at Exhibit A to the Declaration of John V. Golaszewski, Esq., dated February 18, 2013, which is submitted herewith.

1

## ALLEGATIONS OF THE COMPLAINT

**A.   Background**

Plaintiff is a former world class gymnast who in 1999 suffered a debilitating injury which rendered her paralyzed from the mid-chest down. (Compl, ¶1) In addition to, and in connection with, plaintiff's athletic career, plaintiff is a well-known celebrity in her native China.   In 2011 defendant Hai and his law firm represented plaintiff in an action in this Court, Civil Action No. 11-cv-2870, against, among others, AOL Time Warner and the United States Gymnastics Federation.  This action sought damages arising from the career-ending injury plaintiff sustained at the 1998 Goodwill Games, which were held in New York. This action was settled in 2011.

**B.   Defendant Hai's Defamatory Statements**

Following settlement of that action defendant Hai began publishing a series of statements concerning plaintiff. (Id., ¶¶14-27)  These statements were published on-line, on defendants' law blog (which defendant Hai also referred to as a "blawg"). (Id., ¶13)  This law blog, which is operated through the service provider Tencent Weibo, is, upon information and belief, read by millions of Chinese people. (Id., ¶14)  The statements published by defendant Hai are as follows:

- Lan Sang said that if Huan Jian[2] abandoned her, then she would come to the United States and be Hai Ming's mistress. (Id., ¶14);

- She [Lan Sang] also told me how bad my wife is and how nice she is. (Id., ¶16);

- Sang Lan has defaulted on her rent and stole the keys. She also accused me of misleading her. (Id., ¶17);

- But, what disgusted me the most was that Sang Lan allowed Huang Jian to sexually ill-treat her dog Xiaomei.  That day during a meal at their home, the two of them said that Xiaomei had a strong sex drive, and always rode Huang Jian.  Sang Lan said Huang Jian wanted to sexually assault Xiaomei by wearing condoms.  I

---

[2]Huang Jian is plaintiff's former manager and her boyfriend.

immediately said 'Shut up!' I could not listen to that any more. It was disgusting. I am a determined animal defender. Have they no shame? Since then, I have particularly disliked them. (<u>Id</u>., ¶17);

- Would I accept this mistress? I helped her because I didn't think I was a nice guy, and I would like to help the disabled to accumulate virtue for myself. But, out of expectation, I go bitten by the snake. (<u>Id</u>., ¶18).

Further, in or about October 2011 defendant Hai made the following oral statements a press conference following a hearing a Queens Civil Court, Queens County, New York.

- I won prosecution for delinquent legal fees for all 12 charges against Lan Sang. (<u>Id</u>., ¶24);

- [B]ecause [Lan Sang] did not appear in the Court, the Court granted a default judgment, a default judgment means that all of our prosecution was approved, all of the counterclaims of the Defendants were rejected. We sued for 12 charges; each charge is for $25,000; so we won $300,000) (<u>Id</u>., ¶25).

And in March 2012, defendant Hai made the following representation to a reporter:

- Lan Sang provided me falsified evidence for her case. (<u>Id</u>., ¶27).

Prior to defendant Hai's publication of these statements, plaintiff had endorsement and sponsorship deals with a number of Chinese companies. (<u>Id</u>., ¶¶ 34, 35) These included China Baojian, Qiaodan, Sina.com, VOD one, China Sport Lottery, Huayi Publishing Co., Sang's Blog and Beijing Red Banana. (<u>Id</u>., ¶35) Following publication of defendant Hai's statements, which attracted a significant amount of publicity in plaintiff's native China, plaintiff lost all of her sponsorship and endorsement deals. In all, plaintiff lost approximately five hundred and five thousand dollars ($505,000.00) in endorsement deals owing to defendant Hai's statements (<u>Id</u>., ¶35, 37) Moreover, at the time defendant Hai made his defamatory statements, plaintiff was involved in negotiations to enter into an endorsement deal with the Walt Disney Company ("Disney") (<u>Id</u>., ¶¶ 64-67) Upon information and belief, the Disney deal was going to earn

plaintiff upwards of one million dollars ($1,000,000.00). (Id., ¶65)  Following the publication of

defendant Hai's defamatory statements, Disney abruptly ceased its negotiations with plaintiff

(Id.)

## ARGUMENT

### I.    PLAINTIFF IS ENTITLED TO A DETERMINATION ON THE MERITS OF HER CLAIMS AGAINST DEFENDANTS

In deciding a motion brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must "accept as true the facts as alleged in the Complaint." *Jackson Nat'l Life*

*Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699-700 (2d Cir. 1994).  Dismissal of a complaint

is warranted "only if it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations."  *Kelly v. Marchiano*, 332 F.Supp.2d 687, 689 (S.D.N.Y.

2004) (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).  "The task of the court in

addressing a Rule 12(b)(6) motion is not to determine the weight of the evidence, but only to

assess the legal feasibility of the complaint," *Kelly, supra*, 332 F.Supp. 2d at 689 (citations

omitted), and "all reasonable inferences are to be drawn in the plaintiff's favor…." *Id.* (citations

omitted).

As set forth immediately below, plaintiff has adequately alleged each and every cause of

action in the Complaint, and nothing offered in support of defendants' Rule 12(b)(6) motion

constitutes a defense that would support dismissal of any claim.  As such, this Court should deny

defendants' motion to dismiss in its entirety.

## II. DEFENDANTS' PUBLICATION OF FALSE AND MALICIOUS STATEMENTS OF FACT CONSTITUTE DEFAMATION PER SE UNDER NEW YORK LAW

### A. STANDARD

Defamation consists of the "'twin torts of libel and slander' …. Spoken defamatory words are slander; written defamatory words are libel." *Colodney v. Continuum Health Partners, Inc.*, No. 03-cv-7276, 2004 WL 829158, at *7 (S.D.N.Y. Apr. 15, 2004) (*quoting Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001). In order to state a cause of action for libel, a plaintiff must establish five elements: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third-party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; (5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporter Enterprises, Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) (citations omitted). *See also Scholastic, Inc. v. Stouffer*, 124 F.Supp. 2d 836, 849 (S.D.N.Y. 2000) (a claim for defamation must identify "the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated) (internal quotations and citations omitted).

The New York Court of Appeals has held that a defamatory statement is one that exposes an individual to "public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or … induce[s] an evil opinion of one in the minds of right-thinking persons, and … deprives one of … confidence and friendly intercourse in society." *Kimmerle v. New York Evening Journal*, 262 N.Y. 99 (1933). In short, "[t]he gravamen of an action alleging defamation is an injury to reputation," *Celle, supra*, 209 F.3d at 177, insofar as it has long been recognized that the state "has a pervasive and strong interest in preventing and redressing attacks upon reputation." *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966).

Generally a plaintiff will only be able to recover for defamation if there is an allegation of "special damages" which "contemplate the 'loss of something having economic or pecuniary value.'" *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (N.Y. 1992) (*quoting* Restatement [Second] or Torts § 575, comment *b*.)  *See also Celle, supra,* 209 F.3d at 179 ("Special damages consist of 'the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation [.]") (*quoting Matherson v. Marchello*, 473 N.Y.S. 2d 998, 1000 (2d Dep't 1984)

However, New York courts also recognize a cause of action for defamation per se, which allows for recovery without "'pleading and proof of special damages.'" *Celle, supra,* 209 F.3d at 179 (*quoting Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985)).  The four types of statements which constitute defamation per se in New York are statements: "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity of a woman." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (N.Y. 1992) (citations omitted).  Moreover, per se liability for imputing the unchasity of a woman has been codified by the New York legislature: "[i]n an action of slander of a woman imputing unchastity to her, it is not necessary to allege or prove special damages." N.Y. Civil Rights Law, § 77 (McKinney 2009).  *See also, Zherka v. Amicone*, 634 F.3d 642, 645, Fn. 6 (2d Cir. 2011) (quoting same).  When statements fall into one of these categories, "the law presumes that damages will result, and they need not be alleged or proven." *Id.* (citations omitted)

In an action sounding in defamation, "the legal question for the court on a motion to dismiss is whether the contested statements are reasonably susceptible of a defamatory connotation." *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y. 2d 373, 380 (1995) (citations

6

omitted).  If the statement is susceptible of only one meaning, then the court "must determine as a matter of law, whether that one meaning is defamatory.  If the words are reasonably susceptible of multiple meanings, some of which are not defamatory then it is for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood." *Celle*, *supra* 209 F.3d at 178 (citations omitted).

Contrary to defendants' argument that defendant Hai's statements constitute non-actionable opinion -- or constitute true and accurate reporting on judicial proceedings -- as set forth immediately below each and every statement published by defendant Hai constitutes defamation per se under New York law.

We address defendants' defamation, as set forth in four separate categories, in turn.

## B.      THE DEFAMATORY STATEMENTS

### i.      Defendant Hai's False Statements Alleging Plaintiff's Encouragement and Allowance of Bestial Acts Constitute Defamation Per Se

In September 2012 defendant Hai published the following false statements concerning plaintiff, his former client:

> But, what disgusted me the most was that Sang Lan allowed Huang Jian to sexually ill-treat her dog Xiaomei.  That day during a meal at their home, the two of them said that Xiaomei had a strong sex drive, and always rode Huang Jian.  Sang Lan said Huang Jian wanted to sexually assault Xiaomei by wearing condoms.  I immediately said 'Shut up!'  I could not listen to that any more.  It was disgusting.  I am a determined animal defender.  Have they no shame? Since then, I have particularly disliked them.

(Compl., ¶17). First, bestiality is a serious crime constituting "sexual misconduct" under New York law.  *See* New York Penal Code, §130.20 ("A person is guilty of sexual misconduct when: … 3. *He or she engages in sexual conduct with an animal* or a dead human body.") (emphasis added).   It is considered a class A misdemeanor, punishable by up to a year in prison. (*See*

§130.20)  As such, defendant Hai's allegation that plaintiff encouraged and allowed bestial acts between her boyfriend and her dog constitutes defamation per se under New York law. *See Liberman, supra* ("charging plaintiff with a serious crime" constitutes defamation per se in New York).

Second, the imputation of bestiality -- to either an individual and/or her family -- has time and again been held to constitute defamation per se in various Courts throughout the United States. *See, e.g., Negron v. Rexam Cosmetic Packaging, Inc.* No. CV044000333S, 2006 WL 240528 (Conn. Super. Jan. 11, 2006) (series of photographs, posted throughout workplace, in which plaintiff's "supervisors inserted sexually oriented comments, clearly implying that the plaintiff was engaged in acts of bestiality with his pet" constituted a claim for libel *per se*); *Flentye v. Kathrein*, 485 F.Supp. 2d 903, 921-22 (N.D. Ill. 2007) (defendants "extreme and outrageous" "assertions that [plaintiff] and his family embrace thievery, deviance and racism, as well as profanity-laced depictions of [plaintiff] engaging in bestiality, scatology, and other … assertions of a sexually repugnant nature" constituted claim of defamation under Illinois law); *Cleaveland v. Detweiler*, 18 Iowa 299 (1865) (holding that an allegation that a woman had intercourse with a dog was defamatory because an "ordinary accusation of unchastity is mild and gentle as compared with the one for which this action is brought."); *Haynes v. Ritchey*, 30 Iowa 76 (1870) ("We have no hesitation in holding that to charge a woman with beastiality [sic] is to impute to her a debasement and depravity of thought and sentiment not involved in any other possible accusation, and is an imputation of unchastity of the gravest and grossest character, and is actionable, *per se*").  This authority likewise supports a finding of defamation per se against defendants.

8

Third, and relatedly, defendant Hai's publication of a claim that plaintiff encouraged and allowed bestial acts between her boyfriend and her dog is exactly the type of statement which would expose an individual to "public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or … induce[s] an evil opinion of one in the minds of right-thinking persons, and … deprives one of … confidence and friendly intercourse in society." *Kimmerle, supra.*   That is, it is exactly the type of outrageous and inflammatory claim that would tend to injure an individual's reputation. *See Celle, supra*, 209 F.3d at 177.[3] This is especially true for a celebrity who has endorsement deals with various companies and whose "trade, business or profession" is based in large part on maintaining a public image with which a corporation would want to be associated. *See Liberman, supra* (statements that "tend to injure another in his or her trade, business or profession" constitute defamation per se).

As such, for each of the three reasons set forth above, defendants' statement should be held to be defamation per se.

In an effort to explain away this outrageous and defamatory statement, defendants argue that the statement merely constitutes defendant Hai's non-actionable "opinion as to why he dislikes Plaintiff and Huang Jian." (Brief, p.11).   This is, of course, not a novel tactic when defending defamation suits, but an evaluation of defendant Hai's statement makes abundantly

---

[3] Indeed, New York courts have held that statements alleging that an individual was a homosexual have constituted defamation per se.   *See Nacinovich v. Tullett & Tokoyo Forex. Inc.*, Index No. 107778/96, 1998 WL 1050971, at *11 (N.Y. Sup., May 18, 1998) (sustaining an allegation for defamation per se based on a cartoon drawing which "graphically depicts plaintiff engaging in a sexual act with another male co-worker and another [which] depicts him naked and holding another man.")   As the *Nacinovich* court held, such false claims are defamatory per se because "[r]ightly or wrongly, the society in which we live still attaches a stigma to a person who is labeled a homosexual. Consequently, a depiction which falsely imputes homosexual behavior constitutes libel *per se* under our State laws.").   Clearly, a depiction that plaintiff supported and encouraged her boyfriend's bestiality is likewise defamatory per se because of, *inter alia*, the stigma which attaches to such behavior, and because the statement was made with the intent to injure plaintiff's reputation and expose her to shame.

9

clear that he is claiming to know certain facts about plaintiff and her family which an ordinary reader could believe to be true.

Though there is no "bright line test to aid in determining whether a statement is one of opinion or fact," *Belly Basics, Inc. v. Mothers Work, Inc.*, 95 F.Supp.2d 144, 145 (S.D.N.Y. 2000), New York courts rely on a three-factor test to distinguish statements of fact from statements of opinion: (i) whether the challenged statements have a precise and readily understood meaning; (ii) whether the statements are susceptible of being proven false; and (iii) whether the context signals to the observer that the statements are more likely to be expressions of opinion rather than fact. *See Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997). Whether the statement expresses fact or opinion is a question of "law for the court and one which must be answered on the basis of what the average person hearing or reading the communication would take it to mean." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986).

As the New York Court of Appeals has held, a "'pure opinion' is a statement of opinion which is accompanied by a recitation of the facts upon which it is based. An opinion not accompanied by such a factual recitation may, nevertheless, be 'pure opinion' if it does not imply that it is based upon undisclosed facts." *Id.* "When, however, the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a "mixed opinion" and is actionable." *Id.* (*citing Hochner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.), *cert denied sub nom. Hotchner v. Doubleday & Co.*, 434 U.S. 834 (1977). "The actionable element of a 'mixed opinion' is not the false opinion itself – it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking. *Id.* (*citing Rand v. New York Times Co.*, 75 A.D.2d 417, 422 (1st Dep't 1980)).

As the Second Circuit has held, the "essential task" when deciding whether a statement is actionable defamation " is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were … written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion. If the statement reasonably would be understood as implying undisclosed facts then it is not protected opinion under New York's constitution." *Celle*, 209 F.3d at 178 (citations omitted). *See also Hotchner, supra.* 551 F.2d at 912 ("Liability for libel may attach … when a negative characterization of a person is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader. If an author represents that he has private, first-hand knowledge which substantiates the opinions he expresses, the expression of opinion because as damaging as an assertion of fact.") This inquiry must be made from the perspective of an "ordinary reader." *See Mr. Chow of New York v. Ste. Jour. Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985) ("[T]he inquiry into whether a statement should be viewed as one of fact or one of opinion must be made from the perspective of an ordinary reader." ).

Defendants' argument that the above-referenced statement merely constitutes defendant Hai's "opinion" as to why he "dislikes" plaintiff[4], ignores the fact that this opinion is based on certain factual assertions concerning, *inter alia*, plaintiff's encouragement and allowance of bestial acts between her boyfriend and her dog. This is the definition of an assertion of an "undisclosed fact" (*Celle, supra*), which an ordinary reader could believe to be true. As such, it is actionable defamation per se under New York law. *Levin, supra* (a factual assertion is one which "is susceptible of being proven false.") The fact that defendant Hai *also* included an

---

[4] See Defendants Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Complaint, (hereinafter, "Brief"), p.8.

11

opinion as to why he "dislikes" plaintiff does not transform the statement into an opinion; it at most creates a "mixed opinion", which is, like a factual assertion, actionable in New York.

As such, insofar as defendant Hai's statement that plaintiff encouraged and allowed bestial acts between her boyfriend and her dog constitutes defamation per se under New York law, defendants argument that this was merely a recitation of defendant Hai' opinion should be rejected by this Court, and the motion to dismiss, as to this statement, should be denied.

### ii. Defendant Hai's False Statements Alleging Criminal Activity on the Part of Plaintiff Constitute Defamation Per Se

In March and October 2012 defendant Hai made the following false statements concerning plaintiff, his former client:

> Sang Lan has defaulted on her rent and stole the keys. She also accused me of misleading her. (Compl., ¶17);

> Lan Sang provided me falsified evidence for her case (Id., ¶27).

As noted *supra*, "charging plaintiff with a serious crime" constitutes defamation per se under New York law. *Liberman, supra.* Under Article 155 of the New York Penal Code, larceny is, at minimum, a Class A Misdemeanor punishable by up to one year in prison. *See* N.Y. Penal Law, §155.25 (discussing petite larceny). Moreover, under Article 175 of the New York Penal Code, the falsification of certain documents constitutes a felony. *See, e.g.,* N.Y. Penal Code § 175.10 ("Falsifying business records in the first degree" constitutes a "class E felony"); N.Y. Penal Code § 175.25 ("Tampering with public records in the first degree" constitutes a "class D Felony"); N.Y. Penal Code § 175.30 ("Offering a false instrument for filing in the first degree" constitutes a "class E felony"). As this Court has held, falsification of evidence constitutes a "fraud upon the Court" and is sanctionable. *See Scholastic, Inc. v. Stouffer*, 221 F.Supp. 2d 425, 439 (S.D.N.Y. 2002) (sanctions deriving from a fraud on the Court are warranted when a party has

12

"sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate" an action) (citations omitted)).[5]

Contrary to defendants argument, (Brief, p.8) the defamation in the above-statement is *not* that plaintiff "misled" defendant Hai, but rather a factual assertion that plaintiff is a thief. Moreover, alleging falsification of evidence – or, put another way, perpetrating a fraud upon the Court – is unquestionably a serious crime which, if true, would rightly expose plaintiff to public shame, contempt and ostracism. *See Kimmerle, supra.*

Moreover, in evaluating what an "average person hearing or reading the communication would take it to mean," *Steinhilber, supra,* the Court must take into account that the allegations of criminal activity on the part of plaintiff were made by her *former attorney.* A lay person would rightly impute to defendant Hai heighted knowledge concerning 1) plaintiff's activities and, 2) the legality of such activities, to a licensed attorney who had represented a plaintiff.

Defendant Hai's public allegations that plaintiff was engaged in serious criminal activity constitute defamation per se under New York law, and as such defendants' motion to dismiss the defamation claim should be denied.

### iii.     Defendant Hai's False Statements Alleging That Plaintiff Desired to be His Mistress Constitute Defamation Per Se

In September 2012 defendant Hai made the following false statements concerning plaintiff, his former client:

> Lan Sang said that if Huan Jian abandoned her, then she would come to the United States and be Hai Ming's mistress. (Compl., ¶14);

---

[5]Though New York does not recognize the offense of "Falsification of Evidence", as noted *supra*, whether a statement is defamatory "must be answered on the basis of what the average person hearing or reading the communication would take it to mean." *Steinhilber, supra.* We submit that a lay person hearing that plaintiff had "falsified evidence" would take such a claim to mean that plaintiff had not only falsified documents and/or testimony, but had likewise perpetrated a fraud on the Court, *Scholastic, supra.*, both of which are serious and punishable offenses under New York law and the law of this Circuit.

> She [Lan Sang] also told me how bad my wife is and how nice she is. (Id., ¶16);

> Would I accept this mistress? I helped her because I didn't think I was a nice guy, and I would like to help the disabled to accumulate virtue for myself. But, out of expectation, I got bitten by the snake. (Id., ¶18)

As noted *supra,* "imputing unchastity of a woman" constitutes defamation per se under New York law, *Liberman, supra,* and liability for such an imputation has been codified by the New York legislature. *See* N.Y. Civil Rights Law, §77 ("[i]n an action of slander of a woman imputing unchastity to her, it is not necessary to allege or prove special damages). *See also, Zherka, supra* (quoting same). In determining whether these three factual assertions imputing unchasteness to the plaintiff constitute defamation, this Court "must consider the content of the communication as a whole, as well as its tone and apparent purpose," within the "overall context in which the assertions were made." *Brian v. Richardson,* 87 N.Y.2d 46, 51 (1995). *See also, Celle, supra,* 209 F.3d at 178 (the "essential task" of a Court " is to decide whether the words complained of, <u>*considered in the context of the entire communication and of the circumstances in which they were ... written,*</u> may be reasonably understood as implying the assertion of undisclosed facts...")(emphasis added).

Defendants attempt to justify defendant Hai's factual assertions by claiming that he was merely "repeating Plaintiff's opinion," (Brief, p.10), but that argument overlooks the fact that by these statements defendant Hai is clearly implying that he has undisclosed facts concerning plaintiff's desire to be his mistress; e.g., "Lan Sang <u>***said***</u> that if Huan Jian abandoned her, then she would come to the United States and be Hai Ming's mistress" (emphasis added); "She [Lan Sang] also <u>***told me***</u> how bad my wife is and how nice she is." (emphasis added). Whether or not plaintiff actually made these statements is "susceptible of being proven false" (*Levin, supra*), and

as such constitutes a factual assertion under New York law.  In all events, these statements are, at the very least, actionable mixed opinions because they imply "that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." *Steinhilber, supra.* 68 N.Y.2d at 289. *See also, Hotchner, supra*, 551 F.2d at 912 ("Liability for libel may attach … when a negative characterization of a person is coupled with a clear but false implication that the *author is privy to facts about the person that are unknown to the general reader.  If an author represents that he has private, first-hand knowledge which substantiates the opinions he expresses, the expression of opinion because as damaging as an assertion of fact.*" (emphasis added)

As such, defendant Hai's factual assertions that plaintiff desired to be his mistress constitutes defamation per se under New York law, and as such the motion to dismiss should be denied.

### iv.    Defendant Hai's False Statements Concerning Defendants' Judicial Proceedings Against Plaintiff Constitute Defamation

In October 2012 defendant Hai made the following false statements concerning plaintiff, his former client:

> I won prosecution for delinquent legal fees for all 12 charges against Lan Sang (<u>Id</u>., ¶24)

> [B]ecause [Lan Sang] did not appear in the Court, the Court granted a default judgment, a default judgment means that all of our prosecution was approved, all of the counterclaims of the Defendants were rejected.  We sued for 12 charges; each charge is for $25,000; so we won $300,000) (<u>Id</u>., ¶25)

In seeking to avoid liability for these false and malicious claims, defendants' argue that these statements are entitled to immunity under Section 74 of the New York Civil Rights Law because they are merely reporting on judicial proceedings. (Brief, p. 17)  That statute, however, was

enacted in order to protect media outlets engaged in "fair and true" reporting on judicial proceedings, and New York case-law makes clear that self-serving and malicious statements made on "the courthouse steps" are not entitled to such immunity.

Section 74 of the New York Civil Rights Law states that:

> (a) civil action cannot be maintained against any person, firm or corporation for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true of the statement published. This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.

N.Y. Civ. Rights Law, §74. *See also, D'Angelo-Fenton v. Town of Carmel*, 470 F.Supp.2d 387, 392, at Fn. 3 (S.D.N.Y. 2007) (quoting same). The basis of the immunity found in this statute "is the public interest in having proceedings of courts of justice public, not secret, for the greater security this give(s) the proper administration of justice." *Glantz v. Cook United, Inc.*, 499 F.Supp. 710, 715 (E.D.N.Y. 1979) (citations omitted). "For a report to be characterized as 'fair and true' within the meaning of [Civil Rights Law § 74], … it is enough that the substance of the article be substantially accurate." *Holy Spirit Association for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 67 (1979).

As set forth in the Complaint, (Compl. ¶26), the above-referenced statements of defendant Hai's were a total fabrication of the judicial proceedings involving plaintiff. In fact, defendant Hai had withdrawn the motion which was to be heard in October 2011 and the matter was set down for an inquest. (Id.). These false statements -- made by a party to an action, rather than a media outlet -- are simply not the type of statements which N.Y. Civil Rights Law §74 was enacted to protect because such fabrications in no way serve the public interest. *See D'Annunzio v. Ayken, Inc.*, 876 F.Supp.2d 211, 217 (E.D.N.Y. 2012) ("The purpose of providing

16

immunity to fair and true reports of judicial proceedings is said to be to encourage the dissemination of information concerning the judicial branch of government and thereby serve the public interest.")

Indeed, the privilege under §74 of the Civil Rights Act "does not extend to statements in a report that imply misconduct beyond that alleged in the judicial proceeding on which the report is based.  If the published account, along with the rest of the article, suggests more serious conduct than that actually suggested in the official proceeding, then the privilege does not attached, as a matter of law." *D'Annunzio,* 876 F.Supp. at 218 (*citing Ocean State Seafood, Inc. v. Capital Newspaper. Div. of Hearst Corp.*, 492 N.Y.S.2d 175 (3d Dep't 1985) (Section 74 "privilege does not apply when the news account of the judicial proceeding is combined with other facts or opinions that imply wrongdoing.")

Defendant Hai's statements, which impute that he won a default judgment against plaintiff, and that he was awarded upwards of $300,000 in legal fees, imply wrongdoing by plaintiff; namely, that she failed to defend herself in legal proceedings.  As such, these statements produce "a different effect on the mind of the reader from that which the pleaded truth would have produced." *Dribble v. WROC TV Channel 8,*, 530 N.Y.S.2d 388, 389 (4th Dep't 1988).  Moreover, in making these statements, defendant Hai was not acting as "an agent of the public, reporting only that which others could hear for themselves were they to attend the proceedings," *Dribble, supra,* but rather was acting an adversary and seeking to impugn plaintiff and gain publicity for himself by issuing statements which he knew to be false.  Such tactics and statements are not entitled to immunity under Civil Rights Law §74.  *See Bridge C.A.T. Scan Associates v. Ohio-Nuclear, Inc.*, 608 F.Supp. 1187, 1195 (S.D.N.Y. 1985) ("false and malicious statements" made by a party in order to "stimulate press coverage and wide publicity" is "beyond

17

the pale of protection" afforded under Section 74).

As such, defendants attempt to avail themselves of the immunity afforded by Section 74 should be rejected by this Court, and defamation cause of action as to these statements should be sustained.

## C. SPECIAL DAMAGES

As set forth above, each of defendants published statements constitute defamation per se under New York law. But even if such statements were not defamatory per se -- which they are - plaintiff has nevertheless adequately alleged a claim for special damages stemming from defendants various defamations. "Special damages consist of the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation [.]" *Celle, supra,* 209 F.3d at 179 (citations and quotations omitted). Special damages "must be fully and accurately stated, with sufficient particularity to identify actual losses." *Id.* (citations and quotations omitted).

As set forth in the Complaint (¶ 35), plaintiff has alleged its special damages with the particularity required by this Circuit. Specifically, plaintiff has alleged that defendants' defamation was the proximate and direct cause of the cancellation of no less than eight (8) endorsement contracts to which plaintiff was a party. As likewise set forth in the Complaint, plaintiff has specifically stated the pecuniary loss from the cancellation of each contract. (Id.) These endorsement contracts, and the specific pecuniary damages plaintiff suffered due to their cancellation, are as follows: China Baojian: $48,154.09; (2) Qiaodan: $6,420.55; (3) Sina.com: $160,513.64; (4) VOD one: $96,308.19; (5) China Sport Lottery: $64,205.46; (6) Huayi Publishing Co.: $41,733.55; (7) Sang's Blog: $48,154.09; (8) Beijing Red Banana: $40,128.41. Plaintiff's iteration of the exact losses relating to the cancellation of each contract contains the

requisite specificity required under New York law.  *See, e.g., Sprewell v. NYP Holdings, Inc.*, 772 N.Y.S.2d 188, 196 (Sup Ct., N.Y County, 2003) (holding that special damages had been adequately pled when plaintiff, a professional basketball player, alleged he had been fined more than $250,000 by his employer, the New York Knicks, due to a "negative campaign created by Defendants and based upon false information.")  In the *Sprewell* case, the court held that insofar as the complaint identified the fine as a "specific, identifiable, pecuniary loss, and allege[d] a causal relationship between the articles' publication and that loss", special damages were adequately pled. *Id.*  Moreover, plaintiff here has specifically alleged that a prospective endorsement contract with Disney, which was valued at upwards of $1,000,000.00, was likewise cancelled upon the publication of defendants' defamations. (Compl. ¶ 65).  This too is a specific, pecuniary loss which plaintiff claims she suffered due to the publication of defendants' various defamations.

As such, even if the above-referenced defamatory statements did not constitute defamation per se, special damages have been adequately pled concerning the pecuniary losses sustained by plaintiff due to defendants' defamations.

### III.    DEFENDANTS HAVE VIOLATED NEW YORK CIVIL RIGHTS LAW §§ 50-51

In order to establish liability under New York Civil Rights Law, plaintiff must demonstrate each of the following four elements: (i) usage of plaintiff's name, portrait, picture, or voice; (ii) within the state of New York; (iii) for purposes of advertising or trade; (iv) without plaintiff's written consent.  *Molina v. Phoenix Sound, Inc.*, 747 N.Y.S.2d 227, 229 (1st Dep't 2002) (*citing* N.Y. Civ. Rights Law, §§ 50-51).  *See also, Hoepker v. Kruger*, 200 F.Supp.2d 340, 348 (S.D.N.Y. 2002) (citing New York test).  When taken together sections 50 and 51 of the Civil Rights Law, create a cause of action in favor of "[a]ny person whose name, portrait, picture

or voice is used within this state for advertising purposes or for the purposes of trade without …
written consent." *Id.*

As this Court has held, the purpose of the statute is to "protect a person's right to be free
from unwarranted intrusions into his or her privacy … [and] [w]hile First Amendment concerns
do come into play, the rights guaranteed by the First Amendment do not require total abrogation
of the right to privacy, and a careful weighing of interests, on a case by case basis, is therefore
necessary." *Hoepker*, 200 F.Supp. 2d at 348 (internal quotations and citations omitted). *See also,*
*Groden v. Random House, Inc.*, No. 94 cv 1074 (JSM), 1994 WL 455555 (S.D.N.Y. Aug. 23,
1994) ("The purpose §§ 50-51 is to protect against the commercial appropriation of a plaintiff's
name or likeness for defendants' benefit.")

In this case plaintiff has alleged that defendant Hai published numerous photographs of
plaintiff on his law blog without her permission, that these photographs were published beside
false and defamatory statements defendant Hai made concerning plaintiff, and that defendant Hai
did this, *inter alia*, in order to monetize plaintiff's international fame and attract new business for
himself. (Compl. ¶¶40-43).  Defendants specious argument that defendant Hai may have been
posting articles concerning plaintiff to generate "discussions on certain topics and areas of social
news and events" (Brief., p.19) conveniently overlooks the fact that defendant Hai was plaintiff's
attorney, that he stated on his blog that he took her case in order to "help[] her", and that he
would from time to time "call[] press conferences to discuss plaintiff" and the lawsuit he filed
against her. (Compl., ¶¶45, 46)  It is alleged that defendant Hai engaged in this behavior in order
to generate new "fees and revenues through the attention garnered by the use of Plaintiff's
likeness and the publication of false stories about Plaintiff both on the blawg and in other forms

of media." (Compl. ¶ 42). This is sufficient to state a cause of action for violation of Civil Rights Law §§ 50-51.[6]

Defendants argument (Brief, p. 20-21) that their publication of plaintiff's photograph could fall under the "newsworthiness" exception of Civil Rights Law §§ 50-51 is without merit, because there is absolutely nothing newsworthy about defamatory allegations that plaintiff was engaged in criminal activity, or encouraged or allowed bestial acts, or was attempting to seduce defendant Hai.   As defendants themselves note, even under the broad interpretation to "newsworthiness" given by New York courts, "[n]ewsworthiness includes not only descriptions of actual events, but also articles concerning political happenings, social trends or any subject of public interest." *Messenger v. Gruner + Jahr Printing & Publishing*, 94 N.Y.2d 436, 441 (2000). Defendants' defamations fall into none of these categories.

If there exists a justifiable reason for defendant Hai's publication of plaintiff's photograph next to the defamatory comments about her which does not involve defendants' "advertising or trade", then defendants will have ample opportunity at trial to explain that reason. However, the arguments set forth in defendants' brief do not alter the rule that when a motion is brought under Rule 12(b)(6), the Court is obligated to "accept as true the facts as alleged in the Complaint." *Jackson, supra.*, and that "all reasonable inferences are to be drawn in the plaintiff's favor …." *Kelly, supra.*

As such, defendants motion to dismiss this cause of action should be denied.

---

[6]Defendants misstate the holding of *Cersani v. Sony Corp.*, 991 F.Supp. 343 (S.D.N.Y. 1998).  The Court there dismissed plaintiff's cause of action under §§ 50-51 not because plaintiff had failed to allege that defendant charged a fee and generated revenue by the screening of the film at issue in that action, but rather because New York courts had clearly held that "a film screening, without charge, does not constitute a use for 'advertising purposes or for the purpose of trade'" *Cersani*, 991 F.Supp. at 357 (*quoting McGraw v. Watkins*, 373 N.Y.S. 2d 663, 665 (3d Dep't 1975).

## IV.   PLAINTIFF HAS ALLEGED A VALID CAUSE OF ACTION FOR BREACH OF CONTRACT

In order to assert a valid cause of action under New York law a plaintiff must allege: (1) the existence of a valid contract; (2) plaintiff's performance of the contract; (3) defendant's material breach of the contract; and (4) resulting damages. *See Noise in the Attic Productions, Inc. v. London Records*, 782 N.Y.S.2d 1 (1st Dep't 2004).

The Complaint in this matter alleges that the plaintiff entered into a contractual relationship with defendants (Compl., ¶53)[7] and that defendant Hai breached that agreement by, *inter alia*:  "failing in his duty of diligence on multiple occasions" in connection with his representation of plaintiff (Id., ¶54); failing to be "forthcoming with the tribunal in Plaintiff's federal court case" (Id.); and not living up to his obligations as an attorney and counselor at law as set forth in the N.Y. C.P.L.R. (Id.).  Plaintiff likewise alleges damages stemming from this breach including, *inter alia*, the incursion of additional legal expense. (Id.).

While defendant may challenge these allegations at trial, they are entitled to deference on a Rule 12(b)(6) motion, and as such plaintiffs motion to dismiss this cause of action must be denied.

## V.   PLAINTIFF HAS ALLEGED VALID CAUSES OF ACTION FOR TORTIOUS INTEREFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS

The elements of tortious interference with contractual relations are "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff" *M.J. & K. Co., v. Matthew Bender and Co., Inc.*, 631 N.Y.S.2d 938, 940 (2d Dep't 1995) (citations omitted).

---

[7] An attorney-client relationship is contractual in nature.  *See Atkins & O'Brien LLP v. ISS Intern. Service Sys., Inc.*, 678 N.Y.S.2d 596, 598 (1st Dep't 1998) (discussing aspects of attorney-client relationship and termination thereof).

22

Similarly, in order to state a claim for tortious interference with business relations under New York law, four conditions must be met: "(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." *Scutti Enter., LLC v. Park Place Enter. Corp.*, 322 F.3d 211, 215 (2d Cir. 2003)(citations omitted).  In such an action "[t]he motive for the interference must be solely malicious ....", *Matthew Bender, supra* (citations omitted),  and "wrongful means" under New York law is defined as "representing physical violence, fraud or misrepresentation, civil suits and criminal prosecutions and some degrees of economic pressure." *Id.* (*quoting Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp.*, 50 N.Y.2d 183, 191 (1980).

In this case plaintiff has alleged that no less than eight (8) sponsorship contracts to which she was a party were cancelled due to the "use of Plaintiff's image and false stories about Plaintiff that were published by the Defendants." (Compl., ¶ 59)  These false and malicious stories included a variety of misrepresentations concerning plaintiff, and were published with the intent of damaging her reputation (Compl., ¶¶ 14-33)  As alleged, plaintiff is an internationally renowned celebrity who had endorsement deals worth more than five hundred thousand dollars ($500,000.00) (Compl., ¶ 61)  Prior to the publication of defendants' statement, plaintiff was also in negotiations with Disney to enter into an endorsement deal valued at more than one million dollars ($1,000,000). (Id., ¶ 65)    The complaint sufficiently alleges that as a direct and proximate cause of defendants' defamation, plaintiff's existing endorsement contracts were cancelled, and plaintiff's negotiations with Disney were abruptly terminated. (Id., ¶¶ 61, 66)

Both this Court and New York courts have specifically held that allegations sounding in defamation can be the predicate for claims of tortious interference. *See, e.g., World Wrestling*

23

*Federation Entertainment, Inc. v. Bozell*, 142 F.Supp. 2d 514, 531 (S.D.N.Y. 2001) (holding that plaintiff had sufficiently pled tortuous intereference with contractual relationships when the amended complaint specifically alleged that "MCI pulled their advertising … as a direct result of [defendant's] defamatory statements … includ[ing] … a press release.") (citations omitted); *Dobies v. Brefka*, 710 N.Y.S.2d 438, 441-42 (3d Dep't 2000) ("In that plaintiff bases his claim for relief [for his defamation claim] on precisely the same substantive facts pleaded in those [other] causes of action [including tortious interference] … he may pursue such damages in the pending causes of action if he establishes that he suffered the economic injuries so asserted.")

As such, insofar as the predicate of plaintiff's tortious interference with contract and tortious interference with business relations causes of action is the defamatory statements defendants published, plaintiff is entitled to the opportunity to establish that the various defamations did in fact cause the termination of her endorsement contracts, and the termination of her negotiations with Disney.

## VII.   PLAINTIFF HAS ALLEGED A VALID CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

To state cause of action to recover damages for breach of fiduciary duty, plaintiff must allege: "(1) existence of fiduciary relationship, (2) misconduct by defendant, and (3) damages directly caused by defendant's misconduct." *U.S. Fire Ins. Co. v. Ra*ia, 94 A.D.3d 749, 942 N.Y.S.2d 543, 545 (2d Dep't 2012)

As to the first prong, there is of course no question that an attorney has a fiduciary relationship with his client. *See, e.g., Beltrone v. General Schuyler & Co.*, 675 N.Y.S.2d 198 (1998) ("[A]n attorney stands in a fiduciary relationship to the client which relationship is imbued with ultimate trust and confidence that imposes a set of special and unique duties.")

As to the second prong, as set forth in detail above, plaintiff has alleged a series of misconduct on the part of defendant involving the publication of false and defamatory statements which were made with the intention to harm plaintiff's reputation.  Moreover, as set forth in the Complaint, defendant Hai disclosed to a reporter that plaintiff had "only started her lawsuit [in which defendants represented her] to obtain a green card." (Compl. ¶ 70)  Defendants' argument that such a statement does not constitute a disclosure of an attorney-client communication – and, thus, a breach of defendant Hai's fiduciary duty -- is without merit, especially in light of the fact that defendant Hai is an officer of the courts of New York and owed plaintiff the highest duty of loyalty, trust and confidence. (Compl. ¶69).  Moreover, contrary to defendants' argument (Brief, p. 27), there is no particularity required in a pleading of breach of fiduciary duty under N.Y. C.P.L.R. 3016, and defendants have cited to no authority in support of this claim.   Finally, "a significant purpose of the Code of Professional Responsibility is to ensure that attorneys remain faithful to the fiduciary duties of loyalty and confidentiality owed by attorneys to their clients,  as well as the duty to deal fairly, honestly and with undivided loyalty." *Lightman v. Flaum* 97 N.Y.2d 128, 135 (2001) (internal quotations and citations omitted).

While defendants will have ample opportunity at trial to explain why their defamatory statements about their former client do not constitute the predicate of a breach of fiduciary duty action, a valid claim has been stated and the motion pursuant to Rule 12(b)(6) should be denied as to this cause of action as well.

## VIII.   PLAINTIFF HAS ALLEGED A VALID CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

"Under New York law, a claim of intentional infliction of emotional distress requires: '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.' " *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (*quoting Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). The first prong of this cause of action is met when the conduct complained of is "so outrageous in character, and so extreme in degree, as to go beyond all possible founds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy, supra,* 241 F.3d at 258 (*quoting Stuto, supra*, 164 F.3d at 828).

While plaintiff concedes that the bar to stating a cause of action for intentional infliction of emotional distress is high, such an allegation has nevertheless been found to stand in a case of, for example, the publication and dissemination of highly offensive comments concerning a deceased individual. *See, e.g., Roach v. Stern*, 675 N.Y.S. 2d 133 (2d Dep't 1998) (valid cause of action for intentional infliction of emotional distress, where radio personality and his guest made public remarks concerning the cremated remains of decedent, which his guest had brought to the studio).

To reiterate, plaintiff here has alleged that her former attorney published statements claiming that she engaged in criminal acts, that she encouraged and allowed bestial acts between her boyfriend and her dog, and that she made repeated statements concerning her desire to be his mistress. Plaintiff respectfully submits that if such defamatory comments do not rise to the level of "outrageous" under New York law, it is difficult to imagine statements that would.

26

As such, insofar as a valid cause of action for intentional infliction of emotional distress has been alleged by plaintiff, defendants' motion to dismiss should be denied.

## IX.   THIS ACTION IS PROPERLY BEFORE THIS COURT AND SHOULD NOT BE TRANSFERRED TO CIVIL COURT, QUEENS COUNTY

A federal district court will have jurisdiction when there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. §1332(a).  *See also, Panam Management Group, Inc. v. Pena*, No. 08–CV–2258(JFB)(ARL), 2010 WL 3708656, at *3 (E.D.N.Y. Sept. 14, 2010) (quoting same)  In arguing that this matter should be removed to Queens County, Civil Court, defendants claim that concurrent jurisdiction exists between this Court and Queens County Civil Court (Brief, p. 31).  This is simply not true.

As set forth in the Complaint filed in this Court, plaintiff is seeking damages of more than $1.5 million, owing to, *inter alia,* defendants various defamations and intentional torts.  (*See generally,* Compl., Prayer for Relief, p.14).  Civil Courts in New York have jurisdiction over claims "where the amount sought to be recovered … does not exceed $25,000."  *See* New York City Civil Court, Article 2, Jurisdiction, §202 ("Money actions and actions involving chattels. The court shall have jurisdiction of actions and proceedings for the recovery of  money, actions  and proceedings  for  the recovery of chattels and actions and proceedings for the foreclosure of liens on personal property where  the amount  sought  to  be  recovered  or the value of the property does not exceed $25,000.")   As such, the Queens Civil Court does not have jurisdiction over this matter.

Plaintiffs here have adequately alleged diversity of citizenship (Compl., ¶¶ 9-11) and are claiming damages in an amount that exceeds $75,000 (Id., ¶ 5)  The obligations of 18 U.S.C. §1332 have thus been met and this Court has jurisdiction over this matter.

Moreover, given the fact that diversity exists and the amount in controversy exceeds the $25,000 jurisdictional limit of New York Civil Court, were this Court to transfer the case the Queens County Civil Court --   which, again, does not have jurisdiction over the matter -- defendants would be entitled to seek removal to Federal Court pursuant to 28 U.S.C. §1446.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the Complaint should be denied in its entirety.


Dated: New York, New York
          February 18, 2013


                                    **SCHILLER LAW GROUP, P.C.**


                                    By: /s/ John V. Golaszewski
                                         John V. Golaszewski
                                         130 West 42nd Street, Suite 1002
                                         New York, New York 10036
                                         (212) 768-8700

                                         *Attorneys for Plaintiff*

28